DOOLITTLE et al. v. SUPERVISORS OF BROOME COUNTY et al.

An action to have the act of a Board of Supervisors, in erecting a new town, declared null and void, and to restrain proceedings for its organization, cannot be maintained by persons having no other interest than one common to all the freeholders of the proposed town.

Such proceeding, if void, can only be redressed or prevented at the suit of the State, or some officer authorized to act in behalf of the public. A private person cannot bring it in question, unless the act complained of involve some peculiar damage to his individual interests.

The cases of *Adriance* v. *Mayor of New York* ( 1 *Barb. S. C. R.*, 19 ), *Brower* v. *The Same* ( 3 *id.*, 254 ), *Christopher* v. *The Same* ( 13 *id.*, 567 ), *Milhau* v. *Sharp* ( 15 *id.*, 193 ), *Stuyvesant* v. *Pearsall* ( 15 *id.*, 244 ), and *De Baun* v *The Mayor, &c.* ( 16 *id.*, 392 ), disapproved.

APPEAL from the Supreme Court. The object of this suit was to obtain a judgment declaring null and void a certain act of the board of supervisors of Broome county, by which that board divided the former town of Chenango into three towns, to be called respectively Binghamton, Chenango and Port Crane. The plaintiffs, seventeen in number, represent themselves to be, and to have been for more than four months before the commencement of the action, residents and freeholders of that part of the town of Chenango which, by the act of the board of supervisors, is sought to be erected into a separate town by the name of Port Crane.

They state that they commence the action on behalf of themselves and of all other persons who have an interest with them in restraining the organization of the said new towns. The defendants, besides the board of supervisors, are certain persons appointed by the board to preside at the first town meetings in the newly erected towns, and the Secretary of State; and the prayer, as to them, is, that they be enjoined from performing the official duties which would belong to them if the act of the supervisors were valid.

The case was tried before Mr. Justice GRAY, without a jury. It appeared that the application to the board of supervisors asked for the erection of three new towns, to be formed out of the existing town of Chenango and portions of the towns of Colesville and Conklin, pursuant to chapter 194 of the Laws of 1849; and it specified with sufficient distinctness the boundaries of the proposed new towns. The board determined to divide the town of Chenango in the manner prayed for as to that town, but not to include in the new towns any part of Colesville or Conklin; and the act or resolution ultimately adopted was according to such determination. The plaintiffs' counsel insisted that the board had jurisdiction only to grant or refuse the application, and could not legally form new towns in a manner not applied for. It also appeared that there was furnished to the board, when the aforesaid application was heard, Burr's engraved map of Broome county, but no other map or survey; that they did not retain the map so furnished, or file a copy of it, with the certified statement of their action, in the secretary of state's office; but that they filed with said statement another map showing the said division, which, as the judge found, was "entirely different from and not a copy of the aforesaid Burr's engraved map." The plaintiffs' counsel insisted that in these respects there was a departure from the provisions of the statute, which rendered the act of the board void. They also insisted that the board could

not legally erect more than one new town at the same time or upon one application.

The judge found the existence of the foregoing facts, and also that the plaintiffs were such residents and freeholders as stated in the complaint, and he decided that the proceedings of the supervisors were illegal and void. He gave judgment accordingly, and enjoined the defendants who were to have presided at the town meetings from acting in the premises, and the secretary of state from publishing the act of the supervisors among the laws, and the board itself from recognizing the pretended new towns or any officers which might be elected therein.

On appeal, this judgment was reversed at the general term, and the complaint dismissed with costs. Judgment for the defendants being perfected, the plaintiffs appealed to this court.

*H. R. Mygatt*, for the appellants.

*G. W. Hotchkiss*, for the respondents.

DENIO, J. The objection is taken at the outset that the plaintiffs have not shown such an interest in the matter in dispute as will enable them to maintain the action. This raises a question of considerable practical importance, which, if it be now doubtful, ought to be definitively settled. It is not pretended that the plaintiffs have any interest which is not common to all the resident freeholders of the alleged new town of Port Crane. The grievance is that they are all threatened to be subjected for the purposes of local administration to a jurisdiction not created according to law. This will affect not only the other freeholders besides the plaintiffs, but all the inhabitants of that local district, whether they are freeholders or not; for every person residing or owning property there will be liable, in a variety of ways, to the action of the local magistracy which the organization of the new

town will call into existence. The same may be said of the portions of the original town of Chenango which fall within the limits of the two other towns attempted to be created, and in a less degree of all the people of the county of Broome; for in the legal arrangements for the adminis- tration of justice and the management of the fiscal affairs of the county, the magistrates to be chosen in the new towns will be often called upon to perform duties which will affect not only their proper towns, but the inhabitants of every town in the county. In a still slighter degree, but to an extent which may be appreciated, the substitution of pretended legal authority, in any of the local divisions of the state, for the rightful magistracy, works an injury to all the people; for the various and complicated official agencies by which the public business is carried on require the coöpe- ration of legal magistrates of every grade. An unautho- rized and illegal change of the local districts into which the state, for the purposes of administration, is divided and subdivided, would naturally be productive of extensive in- conveniences and losses to individuals as well as to the state in its corporate character. Assuming that the act by which the old divisions were subverted and the new ones were attempted to be created was void, as the plaintiffs maintain in this case, the officers constituted under the new arrange- ment would have no rightful authority, and when the act should result in directly touching the property or person of an individual citizen, his remedy for the wrong would be perfect in the ordinary course of justice. Hence, if the plaintiffs in this case are correct in their principal position; and they, or any of them, shall be directly disturbed in their personal rights or pecuniary interests by any one act- ing under the resolution of the board of supervisors, they have only to appeal to the courts for redress against the wrong-doer in the ordinary way. Up to this time no private interest of the plaintiffs has been invaded, and no injury peculiar to them is threatened. It is said that they may be

assessed to pay taxes through the instrumentality of the officers of the new town. But, as before remarked, if the proceedings to organize the town are void, no valid tax can be imposed through its agency, and the plaintiffs are under no necessity to institute a suit on that account. The actual wrong of which they complain is that a political division has been organized for the purposes of local government, which has not been created according to law; and the doubt is whether they have, in their individual character, a right to litigate that question with the public authorities. The general rule certainly is that for wrongs against the public, whether actually committed or only apprehended, the remedy, whether civil or criminal, is by a prosecution instituted by the state in its political character, or by some officer authorized by law to act in its behalf. For example, criminal offences of every grade, as is well known, are punishable only by prosecution at the suit of the people. Where a crime committed against the public also includes a private injury, the latter may, it is true, be prosecuted at the suit of the party injured; but where there is no direct individual injury, no action can be maintained by a citizen on the ground that his interests as a member of the state have been interfered with or disturbed; though, in a general sense, every citizen has an interest in the maintenance of order and the prevention of crime. Where a person wrongfully assumes, under color of an election or appointment, to hold a public office, which, if the pretension were well founded, would enable him to do acts affecting the persons or property of his fellow-citizens, every one, and especially those who would regularly be the subjects of his jurisdiction, has an interest of a certain kind in divesting him of his assumed authority, and yet nothing is more clear than that a private action for that purpose would not lie. The only method of ousting him is by information, or action prosecuted by the attorney general. (*People* v. *Stevens,* 5 *Hill,* 616.)

The principle is further exemplified in questions respecting nuisances. Common or public nuisances, which are such as are inconvenient or injurious to the whole community in general, are, as all are aware, indictable only, and not actionable; for, as BLACKSTONE says, "it would be unreasonable to multiply suits by giving every man a separate right of action for what damnifies him in common only with the rest of his fellow-citizens." ( *Book* 4, 167; *Seeley* v. *Bishop*, 19 *Conn.*, 128. ) As this sort of injury, if actually committed, can only be redressed by a public prosecution, so where it is only threatened, the preventive remedy by injunction can only be sought in the same manner. ( *Anon.* 3 *Atk.*, 750; *Smith* v. *The City of Boston*, 7 *Cush.*, 254; *City of Georgetown* v. *The Alexandria Canal Company*, 12 *Pet.*, 91. ) Where the act complained of, or which is apprehended, besides being a public nuisance, is specially injurious to a private person, he may maintain an action or a bill for an injunction in his own name. ( *Crowder* v. *Tinkler*, 19 *Ves.*, 617; *Spencer* v. *The London and Birmingham Railroad Company*, 8 *Simons*, 193; *Sampson* v. *Smith*, *id.*, 272; *Corning* v. *Lowerre*, 6 *John. Ch. R.*, 439. ) In this class of cases it is sometimes difficult to determine whether the act complained of is specially injurious to the plaintiff or not. In *Spencer* v. *The London, &c., Railroad Company*, where the bill was sustained, the act was the obstructing a street through which the plaintiffs had to pass from their stables to their place of business. In *Sampson* v. *Smith*, where the plaintiff also prevailed, it was the filling the street, opposite the plaintiff's draper's shop, with smoke and soot from a steam engine which the defendant used at his place of business on the opposite side of the street. In *Corning* v. *Lowerre*, it was obstructing a paved street upon which the plaintiff owned lots, and the injunction was granted. On the other hand, in the *City of Georgetown* v. *The Alexandria Canal Company*, the alleged nuisance was an obstruction of the channel of the Potomac river, which was a common highway, where it

passed through the city of Georgetown. The court considered the plaintiff's as only the rights of private persons, and, inasmuch as they had not averred and proved that they were owners of property liable to be affected by the nuisance, it was held that they could not maintain a bill for an injunction. The court stated the rule to be, that in the case of a public nuisance, where the bill is filed by a private person asking for relief by way of prevention, the plaintiff could not maintain a stand in court, unless he averred and proved some special injury. In *Bigelow* v. *The Hartford Bridge Company* ( 14 *Conn.*, 565 ), the plaintiff filed a bill to restrain the defendants from rebuilding a causeway across certain meadows adjoining the Connecticut river, which the plaintiff apprehended would cause the stream to overflow his lands and those of the other proprietors above. The court dismissed the bill, on the ground, among others, that the injury, should it happen, was not peculiar to the plaintiff, but common to the public generally. "To preserve and enforce the rights of persons ( the court say) as individuals, and not as members of the community at large, is the very object of all suits, both at law and in equity. The remedy which the law provides in cases where the rights of the public are affected, and especially in cases of public nuisance, are ample and appropriate." *O'Brien* v. *The Norwich, &c., Railroad Company* ( 17 *Conn.*, 372 ) was a case of the same class. The act threatened was erecting a bridge over a *cove* or arm of the sea, which would prevent the inhabitants of Preston, of whom the plaintiff was one, from having access to the mouth of the River Thames. The bill was dismissed on the ground that no damage peculiar to the plaintiff was shown. *Smith* v. *The City of Boston* ('7 *Cush.*, 254) is a case to the same effect.

These authorities are sufficient to show the principle upon which the courts act in such cases. In the present case, no difficulty of the kind referred to arises. The act of the supervisors has no bearing upon the plaintiffs' indi-

vidual interests. Whatever concern they have in the question belongs to them only as citizens and members of the community. The doctrine of the cases referred to is at least as applicable to other acts, where the injury is common to the whole community, as to questions of nuisance. In *Hale* v. *Cushman* (6 *Metc.*, 425), it appeared that a town in Massachusetts had passed a vote to pay certain expenses which the plaintiffs, who were "legal voters, and who, together, were liable to pay more than one-half of all the taxes to be assessed on the inhabitants of that town," claimed to be illega. They filed a bill to enjoin the payment, which was dismissed upon the principle referred to.

A contrary rule would be productive of very great inconveniences. If the action can be sustained, any tax-paying citizen may compel the public authorities to litigate, in the courts, the acts of any administrative board or officer in the state, and thus proceedings, which are intended to be summary and inexpensive, can only be perfected by the judgment of the court of final appeal. Every person may legally question the constitutional validity of an act of the legislature which affects his private rights; but if a citizen may maintain an action for such a purpose in respect to his rights as a voter and tax-payer, the courts may regularly be called upon to revise all laws which may be passed. They may, at the instance of any tax-payer, be required to enjoin the comptroller from drawing warrants on the treasurer, and that officer from paying them, in every case where it may be conceived that the law authorizing the expenditure was passed without constitutional authority. The state tax of 1855 was lately impeached, upon plausible grounds, as having been unconstitutionally enacted. The question came before the courts, and was decided upon a direct proceeding by the attorney-general against a board of supervisors. But upon the plaintiffs' position in this case, the state and county officers might be compelled to litigate the question of constitutionality with any tax-payer who should see fit to question a

state or local tax in any and every case, and thus the fiscal business of the state would come to be transacted mainly in the courts. The law does not in my opinion afford such an opportunity for excessive litigation. Where there is a question of official discretion, it must be decided by the officers in whom the constitution and laws have vested the discretion. If it be one of jurisdiction, a party who, in common with his fellow-citizens, is menaced by it, must, in respect to his legal remedy, wait until his individual rights are invaded. If the grievance consists in an alleged illegal exercise of official functions, those who question them, if they would have a preventive remedy, must invoke the action of the officer whom the law has appointed to sue in such cases. No private person or number of persons can assume to be the champions of the community, and in its behalf challenge the public officers to meet them in the courts of justice to defend their official acts.

My attention has been called to a series of cases, upon the general question under consideration, in the courts of the first district, some of which seem to be in hostility to the views which I have stated. (*Adriance* v. *The Mayor, &c., of New York*, 1 *Barb. S. C. R.*, 19; *Brower* v. *The Same*, 3 *id.*, 254; *Christopher* v. *The Same*, 13 *id.*, 567; *Milhau* v. *Sharp*, 15 *id.*, 193; *S. C.*, 17 *id.*, 445; *Stuyvesant* v. *Pearsall*, 15 *id.*, 244; *De Baun* v. *The Mayor, &c.*, 16 *id.*, 392; *Wetmore* v. *Story*, 22 *id.*, 414; *Davis* v. *The Mayor, &c., of New York*, 2 *Duer*, 663; *Roosevelt* v. *Draper*, 16 *How. Pr. R.*, 137.) So far as these cases hold that a party owning property fronting on a public street is entitled to maintain an action to restrain the commission of an act of nuisance in the street, which, from the location of the plaintiff's premises, would render it specially injurious to him, I am of opinion that the law is correctly laid down. The case of *Davis* v. *The Mayor, &c., of New York* (14 *N. Y.*, 506) was decided upon that principle. But the cases above referred to, from the first, third, thirteenth, fifteenth and sixteenth volumes of Mr. BARBOUR's

Reports, affirm that inhabitants, tax-paying citizens and owners of property in the city can, in respect to their interests as such, maintain suits to restrain the common council and other city officers from the performance of public acts alleged to be illegal. The decision in DUER, and the one referred to from the Practice Reports, denies the correctness of that doctrine. I have looked carefully into the judgments which go the length mentioned, for the reasons upon which they proceed. The first in order was an action to restrain certain appropriations of money by the common council, in which the corporation suffered the bill to be taken as confessed. The judge, EDMONDS, had doubts of the jurisdiction, but gave judgment for the plaintiff on the ground that the defendants had apparently acquiesced. In the next case (*Brower* v. *The Mayor*, *&c.*), the corporation was enjoined against leasing a pier in the North river to the commissioners of emigration, to be used as a landing place for foreign emigrants. The judgment proceeds upon the assumption that the act, if performed, would not be a function of government, but a disposition of property which the corporation held as owners, and that they were subject to the same duties in regard to it, and liable to the same remedies, as though they were private owners. In *Christopher* v. *The Mayor*, *&c.*, the common council was enjoined, at the suit of parties claiming no other interest than that of taxpayers and freeholders, from proceeding with a contract made with an individual to build a market, on the ground that it was entered into in violation of the charter and certain city ordinances. The title of the plaintiffs to prosecute was sustained upon the ground that the result of the proceeding of the council would lead to the imposition of a burthen upon their property by means of increased taxation, and upon the supposed analogy between their position and that of the stockholders of a moneyed corporation. Two cases from the English Chancery were relied on, which will be presently examined. *Milhau* v. *Sharp* was a suit to restrain

the defendants from constructing a railroad in Broadway, pursuant to leave given by certain resolutions of the common council. The plaintiffs claimed not only to be tax-payers but owners of lots fronting on that street. An injunction was granted by a divided court; and so far as anything was said respecting the right of the plaintiffs to sue, it was sustained on the ground that they were tax-payers, and the case of *Christopher* v. *The Mayor, &c.*, was referred to as authority for that position. In *Stuyvesant* v. *Pearsall*, decided at the June term, persons describing themselves as property owners and tax-payers of the city, prevailed in an application for an injunction against parties holding a grant from the corporation of a right to lay down a railroad through certain city streets. *Milhau* v. *Sharp* afterwards came on to trial before Mr. Justice HARRIS, at a special term, when judgment for a perpetual injunction was given; but the plaintiff's right to maintain the suit was put expressly upon the ground that the act, if permitted, would cause a special and irreparable injury to the plaintiff's lots fronting on the street. In *De Baun* v. *The Mayor, &c.*, which was prosecuted by certain owners of real estate and tax-payers, the corporation was enjoined by a court held before five judges, two of whom dissented, against entering into a contract with the other defendants, who were also enjoined, to employ them to lay down a pavement of a particular kind in certain streets of the city, the common council having resolved to enter into such a contract. The plaintiffs were determined to be competent parties to maintain the action, on the authority of the previous cases to which I have referred, and another case to the same effect, in the same court, which does not appear to have been reported. *Wetmore* v. *Story*, the last of this class of cases which I have met with, was brought to enjoin the defendants against constructing the Ninth-avenue railroad, pursuant to a grant by the common council, and resulted in the award of a perpetual injunction. It does not certainly appear whether the plaintiffs' title to

prosecute was sustained on the ground of apprehended special damage to their lots on the street, or on the general doctrine established by the previous cases. These judgments all proceed upon the position that the acts of the common council, the execution of which was prohibited, were void, either from want of authority, or on account of a fraudulent breach of trust on the part of the members of the city councils. The acts which were about to be performed in the public streets were, as it was considered, without authority of law, the resolutions, ordinances and grants from the common council being held null and void. Under such circumstances the contemplated disturbance of the streets would have been simply acts of nuisance. As regarded the community at large, they would be public nuisances, which might be prosecuted by indictment, and perhaps by information at the suit of the attorney-general; and when specially injurious to the individual rights of particular persons, they would be the subject of private actions at their suit. In sustaining actions by parties who only claimed to be owners of property, and persons liable to be taxed for public purposes in the city, I think the Supreme Court has overlooked the distinction, which I have endeavored to point out, between individual and public rights and remedies. With the single exception of two cases cited by Mr. Justice EDWARDS, in the case of *Christopher* v. *The Mayor, &c.,* I do not find that any former precedent for the doctrine established was supposed to exist in this country or in England. In the first of these cases (*Bromley* v. *Smith,* 1 *Simons,* 8), certain waste lands, in which the plaintiffs were entitled to rights of common, were inclosed and allotted pursuant to a private act of parliament, which provided that the commoners who were interested might associate and make rules and regulations for their cultivation and management, and, among other things, might appoint a treasurer. The defendant was the treasurer under the act, and it was alleged that he had misappropriated moneys which he had

received as treasurer, and that he contemplated further mis-appropriations. The bill was filed by nine of the persons who, as householders and parishioners in a certain borough and parish, were commoners and interested in the inclosed lands, in behalf of themselves and the other commoners, for an account, and an injunction against further misappro-priation. The bill was sustained. Now, the right of com-mon is as strictly a private right as any other interest in land. It is an incorporeal hereditament, and it is not less a private and individual interest in real estate where lands subject to rights of common are allowed to be inclosed under private acts of parliament. The other case is *Gray* v. *Chaplin* (2 *Sim. & Stu.*, 267.) That was a bill by two of several shareholders in a joint stock canal company, on behalf of themselves and all the other shareholders, to set aside an illegal agreement by which the managing commis-sioners had assigned the tolls to the defendant for ninety-nine years. It was a plain case of a bill for relief against the breach of a private trust; and the only point decided, which has the remotest analogy to this case, is that a bill may be filed by a part of the persons in interest, where it appears that the relief sought by it is in its nature beneficial to all those whom the plaintiffs undertake to represent. I am of opinion that neither of the cases sustain the position for which they were referred to in the Supreme Court. The judgments of that court, which have thus been briefly ex-amined, are of too recent a date to furnish a precedent of themselves; and overlooking, as it seems to me they do, a well established principle of law, I am unwilling to follow them in the decision of the present case. This case does not require us to pass upon the precise question which arose in those which have been referred to. It may be that where a town is governed in its local affairs by means of a corporation, the citizens, as corporators, stand in a different relation to the local government than that which they occu-py in other cases. As that distinction, if it exists, would

not aid the present plaintiffs, and as it has not been argued before us, we abstain from expressing any opinion upon it.

The judgment appealed from, for the reasons which have been given, should be affirmed.

SELDEN, J., expressed no opinion; all the other judges concurring,

Judgment affirmed.