JOHN LUTES AND OTHERS, RESPONDENTS, *v.* MARTIN BRIGGS AND OTHERS, COMMISSIONERS OF PUBLIC WORKS OF THE CITY OF ROCHESTER, AND OTHERS, APPELLANTS.

*Public works — contract for, which includes work not mentioned in ordinance — remedy of persons assessed therefor — Where municipal officers do not constitute a body corporate, when the city may be made a party — Injunction to prevent illegal acts likely to result in a multiplicity of suits.*

An ordinance was adopted by the commissioners of public works of the city of Rochester relative to certain public work, and proposals advertised for. After the bids were received the contract was awarded by the board to S. (one of the bidders) for the work advertised for. Afterward, on the petition of certain persons, the resolution awarding the contract was reconsidered, and thereafter

a resolution was passed, and a contract entered into with S. in pursuance thereof, providing for work not authorized by the ordinance. *Held,* that an action might be maintained by persons liable to assessment for the expense of said work, for the purpose of having the proceedings of the commissioners declared void, and to restrain the collection of any assessment therefor, as well as the payment of any moneys already collected; and that, as the commissioners of public works are not in terms, by the statute, declared to be a corporation, and it was questionable, therefore, whether the contract should not have been made with the city of Rochester, and especially as the city of Rochester had the custody of the fund, it was properly made a party defendant with the commissioners.

A court of equity has power to interfere, by injunction, when public officers are proceeding illegally to the injury of parties, and when the exercise of such jurisdiction is necessary to prevent a multiplicity of suits at law.

THIS was an action brought to declare void certain proceedings of the commissioners of public works of the city of Rochester, in relation to the construction of a sewer, and to restrain the collection of an assessment therefor, as well as the payment of any moneys already collected.

On the 19th of January, 1874, after hearing the allegations of all parties, an ordinance was adopted by said commissioners, ordaining, among other things, " the deepening and enlarging of Platt street sewer, from the east high bank, in the rear of the Jefferson mills building, to the west line of State street, by enlarging that portion under said mill, constructing a tunnel under the race and deepening that portion of the sewer in Mill street and Platt street, to the west line of State street; said sewer to be not less than seven feet square, and an arch cover, except that portion which is tunneled, and to be at least twenty-five feet deep at State street; also to construct the necessary surface sewers, man-holes and connections for side sewers; and the whole expense shall be defrayed by an assessment upon the lots and parcels of land to be benefited thereby." An assessment was accordingly ordered to be made, for the sum of $23,000, the estimated expense, and the same was afterward made and confirmed. The commissioners duly advertised for proposals for the construction of the work, and, among others, John D. Spalding made a proposal, in an alternative form, one alternative being " for sewer through Mill and Platt streets, per lineal foot, twenty dollars," and the other alternative being " for tunnel under Mill and Platt streets, per lineal foot,

twenty-five dollars." On the 10th of April, 1874, the commissioners, by resolution, awarded the contract to Spalding " for $18,680, for an open cut and tunnel sewer." On the 24th of April, 1874, some of the parties interested petitioned. the commissioners " to contract for a tunnel, and not for an open cut;" and on the same day the commissioners passed a resolution, that the vote awarding the contract for building an open sewer be reconsidered, and postponed further action. On May 1st, 1874, the commissioners, without further advertisement or ordinance, awarded the contract to Spalding, under the alternative in his proposal, for a tunnel under Mill and Platt streets, and a formal contract was executed. Under this Spalding has gone on with the work and has received some portion of the assessment that has been collected. The last award, being for the tunnel under Mill and Platt streets, increases the expense about $4,000.

The plaintiffs are some of the owners of real estate assessed, and they bring the action in behalf of themselves and. all others similarly interested. " The city of Rochester" was made a party defendant, and in its answer claimed specially that it was not a proper party.

The case was referred, and the referee ordered judgment for plaintiffs for a perpetual injunction restraining the appropriation or payment of any money, out of the fund raised by the assessment, for any work done under that portion of the contract providing for the construction of a tunnel under Mill and Platt streets, and that the plaintiffs recover costs of the defendants generally. The defendants excepted to so much of the report as found that said ordinance did not provide for a tunnel under Platt and Mill streets; that the defendants were all necessary and proper parties to the action, and that plaintiffs were entitled to bring the same; that the second letting of said work for a tunnel, except for that portion under the race, was contrary to the terms of the ordinance and void; that the board, in making said improvement, acted as the agent or instrument or trustee of the land owners; that the plaintiffs were entitled to a perpetual injunction as above stated.

The defendants, the commissioners, etc., and the city of Rochester, appealed, and the case now comes up on reargument.

*J. B. Perkins*, for the appellants.

*J. C. Cochrane* and *V. M. Smith*, for the respondents.

MERWIN, J.:

The referee held that the ordinance of 19th January, 1874, did not provide for or authorize the construction of a *tunnel* under Platt and Mill streets, and this the appellants claim was error. The ordinance was passed after hearing all parties interested, and was the basis of the future action in regard to the sewer. The object to be accomplished, as specified in the ordinance itself, was : " The deepening and enlarging of Platt street sewer ; " in other words, to improve what already existed. The portion to be improved is specified, and a part is under the Jefferson mills, a part under the race, and the balance in Mill and Platt streets. This division indicates the propriety, and, perhaps, necessity of a different kind of work for each division. Then the ordinance specifies for each division the kind of improvement, as follows : " By enlarging that portion under said mill, constructing a tunnel under the race, and deepening that portion of the sewer in Mill street and Platt street." The claim of the appellants calls for a construction of the ordinance the same as if it read : " Constructing a tunnel under the race and through Mill street and Platt street." If this was meant, why was it not so expressed ? Between tunneling and deepening in the ordinary way, there was a difference in expense of some $4,000. When the ordinance was passed, had not the parties interested a right to believe that the board intended to tunnel a part and deepen the rest in the ordinary way ? The ordinance expresses no alternative. It reserves no discretion to be thereafter exercised. Undoubtedly the board had power to provide in the ordinance for tunneling the whole. They then acted on the subject and did not so in terms provide, but did provide for a tunnel in part. The argument seems to me conclusive that the board did not then intend to have a tunnel constructed, except as specifically stated. I think the referee did not err in holding that the ordinance did not authorize a tunnel through Mill and Platt streets.

The appellants further claim that the plaintiffs have no right to

maintain this action, and, to sustain their position, cite *Doolittle* v. *Supervisors* (18 N. Y., 155); *Roosevelt* v. *Draper* (23 id., 318); *Bank* v. *Supervisors* (25 id., 312); *Western Railroad Company* v. *Nolan* (48 id., 513).

The Doolittle case was an action by a citizen of a town to restrain the board of supervisors from erecting a new town. The Roosevelt case was an action by a resident and tax-payer of the city of New York, to declare void an alleged illegal conveyance by said city, of some of its real estate. The case in 25 New York was an action brought by the plaintiff, a bank, against the board of supervisors and collector, to restrain the collection of a tax on plaintiff's personal property, on the ground that the tax was illegal; and the court say such an action would not lie unless it were brought within some acknowledged head of equity jurisprudence. The case in 48 New York was an action to restrain assessors from assessing certain personal property in the hands of trustees, in which plaintiff had a beneficial interest. In the present case the tax or assessment is conceded to be legal; the money is, or will be, collected and paid to the treasurer of the city, subject to the order of the board of public works. (§ 12 of chap. 771 of 1872.) It was raised for a particular, specified purpose, and the board have no right to appropriate it to any other purpose. In the disbursement of the fund, the board acts ministerially. A fund has been collected, is deposited with the treasurer, and is to be administered for the benefit, real or supposed, of the plaintiffs and the others who have paid it in. In one sense the board are trustees, and the plaintiffs beneficiaries, and the action is to prevent a mal-administration of the fund. The public generally are not interested, nor the inhabitants of any entire town or city, or division thereof. I think the case is so different from the cases cited by appellants' counsel, that the rule laid down in them does not apply.

The charter of the city of Rochester (§ 207 of chap. 143 of Laws 1861) provides that if a greater amount is collected than is necessary to defray the expense of the improvement, the common council shall apportion and pay the same back to those from whom the same has been collected. It is suggested that by this provision the plaintiffs have a full remedy at law. But suppose the treasurer has paid it all out on the orders of the board, is the city then liable,

and must the city or the treasurer guarantee the validity of the orders or acts of the board? The remedy here would at least be doubtful. Perhaps the members of the board would be individually liable, but should the contributors be compelled to lie still and allow the money to be spent in an illegal way and then resort to their actions, many in number, when the whole matter can be fairly determined in the present way? There are many cases where the Court of Chancery had jurisdiction to interfere by injunction, when public officers were proceeding illegally and improperly under a claim of right to the injury of parties, or when the exercise of such a jurisdiction was necessary to prevent a multiplicity of suits at law. (*Mohawk and Hudson R. R. Co.* v. *Artcher*, 6 Paige, 83, 88; *Western R. R. Co.* v. *Nolan*, 48 N. Y., 518.) My conclusion is that the plaintiffs can maintain the action.

It is further claimed by the defendants, that the city of Rochester was not a proper party defendant. It is a question under the charter of the city, as amended in 1872, whether or not the contracting party with Spalding was not in fact the city. The commissioners of public works are not, in terms, made a corporation, and it may be that all formal contracts should be made in the name of the city by the commissioners of public works, and that when the commissioners accepted the bid of Spalding, the city was formally bound. Besides, the city, by its treasurer, had the custody of the fund. I think, therefore, the city was properly made a party. It was an equity case, and it was proper to make parties all that in any contingency would be affected or controlled by the judgment.

Upon the trial the plaintiffs were allowed, under defendants' objection, to ask one of the commissioners, a witness called in their behalf, whether he knew, or supposed the letting the contract for the tunnel amounted to $4,000 or $5,000 more than the contract as first awarded. It may be, the form of this question was not right, but I cannot see how the error, if any, could in any way affect the result. The plaintiffs were also allowed to prove that it was more expensive to put lateral sewers into a tunneled sewer than an open cut. This was competent though not very material. The error, if any, does not affect the result.

The judgment should be affirmed.

GILBERT, J. (dissenting):

I am of opinion that this action cannot be maintained. In the first place, the plaintiffs do not seek to invalidate the assessment. Although it is averred in the complaint that it is illegal, yet that point was expressly waived on the argument of this appeal. And probably the rule of law on this subject would deprive the plaintiffs of a right to sue for equitable relief upon that ground. (See 14 N. Y., 534; 25 id., 322; 43 id., 290; 15 Barb., 375; 43 id., 239; 56 id., 340; 10 Abb. [N. S.], 119.) In the second place, the plaintiffs have no such interest in the fund raised by the assessment, as entitles them to interfere with the disposition of it. The referee seems to have regarded the commissioners as agents of the plaintiffs and other tax-payers who have been assessed for making the sewer, and, upon that ground, accorded to them an interest in the fund. But this is a mistake. It would be preposterous to hold, that the legal relation of principal and agent existed between the tax-payers and the commissioners. The cases referred to by the referee, which so designate such commissioners, do not mean that the legal relation of principal and agent exists, but merely use the language to illustrate the interpretation placed upon a contract nominally between the city corporation and the contractor, where the city in reality contracts, not in behalf of the citizens at large, but for the sole benefit of the persons assessed for the improvement. The commissioners are officers of the corporation. The collection of the assessment is an exercise of the power of taxation which belongs to the sovereignty of the State, and which, in this instance, has been delegated by the legislature to the corporation. The money paid by the tax-payers is in no sense a voluntary contribution to a common fund, but it is a compulsory payment in discharge of a public burden. Nor does the right to a return of the excess of the assessment over the amount necessary to defray the expense of the work, give to the persons entitled to participate in such distribution any interest in the fund before such excess is ascertained, or any right to have the cost of the work cheapened in order that the amount to be distributed may be increased. For it is only after it has been ascertained that a surplus exists after defraying the *actual* cost of the work, that their interests respectively attach.

Independently of these considerations, I am of opinion that no

illegality has been shown in the action of the commissioners. The conclusion of the referee that the ordinance does not authorize the contract in question, seems to rest wholly upon the idea that it bears a construction that the sewer should be deepened by some process besides tunneling. I cannot assent to that proposition. Here is an old sewer which the public authorities have thought best to enlarge. They therefore passed an ordinance declaring that the following improvement is expedient, namely : " The deepening and enlarging of Platt street outlet sewer, from the east high bank in the rear of the Jefferson mills, leading to the west line of State street, by enlarging that portion of the sewer in Mill street and Platt street, to the west line of State street." The objection taken is, that the commissioners have entered into a contract for doing that part of the work in Mill street and Platt street by the process of tunneling, instead of excavating from the surface downward, thereby increasing the cost of the improvement. It will be seen that the ordinance does not specify the particular mode in which this portion of the work shall be done. We see no more difficulty in deepening a sewer by one mode than by the other. All that is necessary to be done is to sink the bottom of it, and to do this it cannot be necessary to remove the top. I therefore think that the commissioners had the power to choose the mode which, in their judgment, would best subserve the public interest, and that with the honest exercise of that judgment the court has no power to interfere. I have not found any thing in the charter which justifies the complaint of the owners of property assessed for the improvement, that the commissioners caused the sewer to be deepened by the process of tunneling. The right given to them by section 164, to designate the kind of improvement they prefer, and the obligation imposed on the commissioners to adopt and carry out that method of improvement, have not been infringed by the commissioners, for the petition for the sewer in question contains no expression of a preference for an open cut sewer, but it merely asks that it be twenty-five feet deep. Nor did the commissioners exceed their powers in making the second contract at an increased cost. They kept within the estimate. They were not required to advertise the letting anew. The provision of section 164 of the charter, requiring them to advertise for proposals, was complied with by causing

the requisite notice to be published for the prescribed period. Having done that, they were authorized to let the contract as they should deem for the best interest of tax-payers, upon the day named in the notice, or upon an adjourned day. Of this letting, the latter were not entitled to any other notice than that advertisement, and they had no right to interfere with the making of the contract. The notion that the power of the commissioners was spent by the first letting, and that no new letting could be made without notice to the owners, in my opinion, has no warrant in the charter. Nor is it supported by any finding of the referee. The duty was imposed by the charter on the commissioners, and no inference against their fidelity to such trust can be drawn from the fact that they assented to the cancellation of the first contract and entered into another whereby the cost of the work was increased. On the contrary, they acted upon a petition which set forth sufficient reasons for the change, and I am unable to discover any thing in their conduct which the law should condemn.

I think the part of the judgment appealed from should be reversed, and that a new trial should not be granted.

SMITH, J., concurred in the opinion of MERWIN, J.

Judgment affirmed, with costs.