Fuld, J.
(dissenting). The plaintiff, seeking to prevent the alleged misapplication of more than $42,000,000, sues as a citizen and taxpayer for a judgment declaring that section 45-a of the Pari-Mutuel Revenue Law (added by L. 1956, ch. 837) violates the constitutional prohibition against the expenditure of public funds to private parties (N. Y. Const., art. VII, § 8).[1] The courts below dismissed the complaint and we are called upon to decide whether this State shall continue to be one of the very few remaining jurisdictions to adhere to the rule that a citizen-taxpayer, who cannot show any direct or personal injury, lacks standing to challenge allegedly unconstitutional expenditures of state moneys.
Although the rule is one which, judicially formulated, has been applied by this court for more than 100 years (see, e.g., Doolittle v. Supervisors of Broome County, 18 N. Y. 155; Kilbourne v. St. John, 59 N. Y. 21, 27; Schieffelin v. Komfort, 212 N. Y. 520; Bull v. Stichman, 298 N. Y. 516; Dorsey v. Stuyvesant Town Corp., 299 N. Y. 512, cert. den. 339 U. S. 981),[2] it has not only been sharply criticized by authoritative writers on the subject (see, e.g., 3 Davis, Administrative Law Treatise [1958], § 22.09, p. 243 et seq., § 22.10, p. 249 et seq.; Davis, Standing to Challenge *78 Governmental Action, 39 Minn. L. Rev. 353, 386 el seq.; Jaffe, Standing to Secure Judicial Review: Public Actions, 74 Harv. L. Rev. 1265; Note, Taxpayers’ Suits, 69 Yale L. J., 895) but rejected by the courts of many jurisdictions. (See 3 Davis, Administrative Law Treatise, op. oil., p. 245; Jaffe, Standing to Secure Judicial Review: Public Actions, 74 Harv. L. Rev. 1265, 1278.)
At the present time, virtually every state, either by decision or by statute — New York, by section 51 of the General Municipal Law — permits taxpayers to challenge local action and at least 34 states clearly sanction taxpayers’ suits at the state level, that is, actions by state taxpayers challenging state action; indeed, only two states — New York and New Mexico — squarely prohibit such actions. (See Jaffe, Standing to Secure Judicial Review: Public Actions, 74 Harv. L. Rev. 1265, 1278; Note, Taxpayers’ Suits, 69 Yale L. J. 895, 900-902.)[3] “ This trend ”, it has been said, “ reflects the absence of significant reasons for distinguishing municipal taxpayers’ suits, permitted practically everywhere, from their state counterparts. True, the taxpayer’s contribution to the state treasury may be a lesser percentage of the total than his municipal tax payments, and his interest in state affairs might therefore be said to be more remote. But no overriding considerations — such as the need for executive flexibility on the national level in foreign affairs and defense — make review of state action less desirable than review of the affairs of local government.” (Note, Taxpayers’ Suits, 69 Yale L. J. 895, 902.)
Of this there can be no possible doubt. The State has a vital concern, its People a deep interest, in seeing to it that the provisions of our Constitution are enforced, and unconstitutional *79 expenditures of state funds prevented. Neither logic nor policy demands that the judiciary stay its hand and dismiss the action simply because the proceeding happens to be initiated by a vigilant and civic-minded taxpayer following official inaction. It hardly seems consonant with the Constitution itself that the enforcement of its provisions should have to turn on the meaning ascribed to it by members of the executive or administrative branch of government or on whether they choose to assert themselves.
It is self-evident that the denial of standing to a taxpayer will in most instances prevent any challenge to an expenditure of state funds as violative of the Constitution. The suggestion in the opinion of the majority that the Attorney-General and other state officials may be relied upon to attack the constitutional validity of state legislation is both unreal in fact and dubious in theory. As to the Attorney-General, for example, it would seem more appropriate to his office that he defend a statute’s constitutionality when it is challenged than initiate an attack of his own. (Cf. Executive Law, § 71; and see, e.g., Matter of Roosevelt Raceway v. Monaghan, 9 N Y 2d 293.) Certainly, our Constitution does not entrust the determination of constitutionality to the executive branch of the government. But, in any event, if there is an official who is authorized to act and he declines to assert the invalidity of the statute, or otherwise raise that issue, the question whether the expenditures made pursuant to the statute’s provisions violate the State Constitution will never be subjected to judicial scrutiny.
The Constitution is a People’s document and the hypothesis that a citizen-taxpayer has no “ interest ” in state expenditures is little more than a legal fiction. It cannot be squared with the generally accepted doctrine that a taxpayer on the municipal level — where the issues are rarely of comparable importance — does possess the requisite “ direct and immediate ” interest to warrant his bringing an action to challenge the expenditure of municipal funds. (Massachusetts v. Mellon, 262 U. S. 447, 486, supra.) And, beyond that, as the Illinois Supreme Court declared in a case involving the alleged misappropriation of state moneys, the taxpayers’ “ownership of such funds and their liability to replenish the public treasury for the deficiency ”, which might be occasioned by their misuse, should be *80 deemed sufficient to supply the essential basis for standing. (Turkovich v. Board of Trustees of Univ., 11 Ill. 2d 460, 464.)
Little is to be gained by extended discussion of the few arguments which have been put forward to support perpetuation of the rule denying standing to taxpayers on the state level, and I consider briefly but two of them.
Less than persuasive is the claim that the court’s assumption of jurisdiction in these suits in the face of inaction by the executive branch of government charged with the responsibility of preventing the waste of public funds 1 ‘ would be an interference by one department of government with another ”. (Schieffelin v. Komfort, 212 N. Y. 520, 530, supra.) Fundamental to our form of government is the principle that determination of the constitutionality of legislation is essentially a judicial function. And, this being so, it is difficult to understand how it may be said that a court, in making such a determination, would be interfering with another branch of government, or usurping the latter’s powers simply because it acts in a case initiated by a taxpayer. In brief, litigation such as this calls upon the courts to assess the constitutional validity of legislation, not to supervise the acts of another branch of government.
Nor do I find any basis for the concern — expressed in the Doolittle case (18 N. Y. 155, 162, supra) and elsewhere — that, opening the doors of the court to taxpayers would cause a flood of actions by officious meddlers. If there ever was reason for such a fear, it has been completely dispelled by the experience not only of the many jurisdictions where taxpayers’ suits on the state level have long been sanctioned but, indeed, of our own State of New York under the statute permitting municipal taxpayers to challenge the action of local officials (General Municipal Law, § 51). The New Jersey high court accurately appraised the situation when many years ago it observed that ‘‘ The general indifference of private individuals to public omissions and encroachments, the fear of expense in unsuccessful and even in successful litigation, and the discretion of the court, have been, and doubtless will continue to be, a sufficient guard to these public officials against too numerous and unreasonable attacks.” (Ferry v. Williams, 41 N. J. L. 332, 339; see Davis, Standing to Challenge Governmental Action, 39 Minn. L. Bev. 354, 430.) The courts undoubtedly can be relied upon to dis *81 courage and prevent baseless taxpayers’ suits by insisting that the action pose an issue of general public importance; that it involve an actual bona fide controversy, not one. which is feigned; that all interested parties be represented; that there be no other remedy available; and that the public officials vested with authority to bring an action shall have refused to do so. All of these conditions have been met in the case before us.
In sum — although the Legislature could, of course, remove the taxpayer’s disability at a stroke, enforcement of the Constitution should not depend upon the will of the legislative branch any more than on that of the executive. The apathy of the average citizen concerning public affairs has often been decried; under the court-made rule now reaffirmed, it is being compelled. I would change the rule.
The judgment appealed from should be reversed and the motion to dismiss the complaint denied.

. We know from earlier litigation that this is no specious charge or feigned controversy. In Matter of Roosevelt Raceway v. Monaghan (9 N Y 2d 293), not only did the court expressly reserve the very question here sought to be raised (p. 303) but one judge actually expressed the view that section 45-a was “ constitutionally invalid ” in its entirety (pp. 311-315, per Dye, J., concurring).

. It is difficult to reconcile the cited cases with those involving challenged official action with respect to nonfiscal matters. (See, e.g., Matter of Cash v. Bates, 301 N. Y. 258, 261; Matter of Kuhn v. Curran, 294 N Y. 207, 213; Matter of Andresen v. Rice, 277 N. Y. 271, 281; 3 Davis, Administrative Law Treatise, op. cit., pp. 249-250.) In the Cash ease (301 N. Y. 258, supra), for instance, the court held that “the erroneous appointment * * * ought to be open to attack by the petitioners, because as citizens and taxpayers they are entitled to an opportunity to insist upon the construction which this court placed upon the civil service article of the State Constitution ” (p. 261).

. The Federal courts also deny standing to taxpayers attacking Federal expenditures. (See, e.g., Massachusetts v. Mellon, 262 U. S. 447.) However, the Supreme Court in the Mellon ease differentiated between taxpayers attacking the expenditures of the Federal Government and those challenging the expenditure of local funds. (See, also, Wieman v. Updegraff, 344 U. S. 183; Everson v. Board of Educ., 330 U. S. 1; Hart and Wechsler, The Federal Courts and the Federal System [1953], pp. 160-162.) 'Thus, observed the court in Mellon (262 U. S., at p. 486), “ The interest of a taxpayer of a municipality in the application of its moneys is direct and immediate and the remedy by injunction to prevent their misuse is not inappropriate. It is upheld by a large number of state eases and is the rule of this Court.”