[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 320 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 321 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 322 
Assuming that the grant of the land under water executed to the defendant Varnum may have been either void or voidable for any or all the reasons suggested in the complaint, the question which presents itself in the first instance, is whether the plaintiff sustains such a relation to the subject as will enable him to maintain a suit to set the conveyance aside. He is a resident citizen of the city of New York, and is the owner of real and personal property which is liable to be assessed for taxes therein; and he is moreover, a creditor of the city to the amount of more than $100. The defendants' counsel maintain that neither of these characters entitle him to sue for such a cause.
I. As a resident citizen, and a person liable to be taxed, he has no other rights than such as are common to all the people of that community who own property; and we have decided upon full consideration that it requires some individual interest, distinct from that which belongs to every inhabitant of the town or county, to give the party complaining a standing in court, where it is an alleged delinquency in the administration of public affairs which is called in question. (Doolittle v. Supervisorsof Broome County, 18 N.Y., 155.) The fact of owning taxable property is not such a peculiarity as to take the case out of the rule, for all property, with very limited exceptions, is taxable, and everybody either has, or is capable of acquiring, property. Liability to contribute to the public burdens, where there are no privileged classes, is the lot of every member of the State, and a large proportion of all the acts of government, either general or local, involves questions of expenditure, and affects more or less the subject of taxation. If a plaintiff has taxable property at the time he commences his action, he may not have it when the next assessment for purposes of taxation is made; and if he have none when the act complained of is committed, he may be a large taxpayer when that act produces its result in increased taxation. The actual liability of the plaintiff to injury consists in his belonging to a community in which every person is subject to pay taxes of all he possesses. An act of administration likely to produce *Page 324 
taxation is not, therefore, a matter of private or individual concern. It is an affair altogether public; and the only remedial process against an abuse of administrative power tending to taxation which one can have is furnished by the elective franchise, or a proceeding in behalf of the State, or, in the case of an act without jurisdiction, in treating the attempt to enforce the illegal tax as an act of trespass. In the case referred to, the proceeding which was drawn in question was that of the board of supervisors of a county. The reasoning by which the conclusion was reached, as well as the examination of adjudged cases, applied generally to administrative acts of municipal corporations equally with the case in hand. Still, as it had been suggested that different considerations might possibly apply where the act complained of was that of the corporation of a city, we withheld the expression of any opinion upon the alleged distinction between the cases. But having now heard this aspect of the question discussed, we are prepared to say that no such distinction exists. The counties, cities, villages and towns into which the State is divided are governed, as to matters of local policy, by the different agencies which have been created by the general or special laws of the State. In reference to towns and counties the form is, for the most part, though not entirely, uniform, but in regard to cities and villages great diversity exists, no two charters being entirely alike. The object to be obtained, however, by these different modes of carrying on the local administration is the same. The officers of municipal corporations are public officers equally with the officers of towns and counties, and the property which is subject to their control and management is public property in the same sense with the property held for public use in the towns and counties. The position insisted on by the counsel for the plaintiff, that a municipal corporation, in the management of its property, acts in a private capacity, as distinguished from the exercise of a public function, cannot be maintained. No doubt there is a difference between the faculty of passing by-laws and ordinances in the exercise of what is called the legislative powers of these corporations. and that of leasing *Page 325 
and selling their property and collecting the avails, but it is not that one is less a public function than the other. They are equally public acts. The distinction is, that one is a legislative and the other an executive or administrative act; but both are proceedings in the course of public administration. The cases cited for this purpose by the plaintiff's counsel do not sustain his position. In The Presbyterian Church v. The Cityof New York (5 Cow., 538), the corporation of New York, prior to the Revolution, had conveyed to the parties whom the defendant had succeeded, a parcel of building ground in the city, on which the grantee had agreed to erect a church, or to use the ground as a cemetery. The conveyance contained a covenant on the part of the city for quiet enjoyment. The legislature afterwards authorized the Common Council to prohibit burials within the city if they should find it necessary, and they did pass an ordinance which prohibited burials on those premises; and the plaintiff sued, claiming that the ordinance was a breach of the covenant. The defendants prevailed on the ground of the paramount authority of the legislature, and of the Common Council as the delegate of a portion of that authority, to pass all needful laws upon the subject of the public health and morals. They held that it extended to lands granted by the corporation equally with private grants. The case only proves that the rights which parties acquire under a grant from a public corporation, are precisely the same which they would obtain under a conveyance from any other grantor. In either case the grant would be subject to the full exercise of the law-making power, whether general or local. The State by the commissioners of the land office, every day conveys portions of the public lands to individual purchasers, but the transaction is no less an act of public administration, because the jurisdiction of the legislature over the premises is retained precisely as it would be over lands granted by private individuals. In Bailey v. The Mayor of New York (3 Hill, 541), Chief Justice NELSON spoke of the acts of the legislature for the introduction of the Croton water into the city, as an enterprise for the private emolument and advantage of the city, as *Page 326 
well as for the public good. The investment, he said, and the revenues and profits to be derived therefrom, were a part of the private property of the city, and he repeated that the grant of power contained in the act was for purposes of private advantage and emolument. The plaintiff's counsel rely upon these expressions as proving that the city property is private in some sense which affects the present question. But the controversy in the case was whether the water commissioners, under whose directions the Croton dam was constructed, were to be considered the servants of the State or of the city. The term private was used in order to qualify the enterprise and the property which was to be created in the water-works, as a proprietary concern of the city and not of the State. A more discriminating expression might have been used, but the language as it stands is not calculated to mislead one who shall read the whole case.
The difference between a municipal corporation and the ordinary official agencies for the government of a local division of the State consists, mainly, in the capacity of the former to sue and be sued, and to contract under a common seal and in a common name. This circumstance does, no doubt, expose a community thus governed to some suits to which the latter is not exposed. Thus it has been held in a great many cases that a city, or an incorporated village, may be sued for negligence in not repairing the streets, sidewalks, c. But this distinction does not aid the plaintiff in this case. His difficulty is, not that the corporation is not the proper party representing the public to be sued, provided a cause of action exists which the plaintiff can enforce. The defect is the want of a proper party plaintiff. The corporation represents the interest liable to be affected by the remedy sought; but the plaintiff does not represent the whole public, who are the parties claimed to be aggrieved. I am very confident that the plaintiff cannot sustain this action, in his character as a resident citizen and taxpayer.
II. The right to sue, as a creditor holding shares of the city stock, depends upon other considerations. The persons similarly situated are probably numerous; but the rights which *Page 327 
they have belong to them as private individuals, and not as members of the community. If, therefore, the complaint discloses facts which would have given the plaintiff a right of action if he had been the sole creditor of the corporation, he is not, I think, precluded from suing because there are a great many others having the same common interest with him. In such a case the action may be brought by one or more for the benefit of the whole, according to section 119 of the Code, which is only the enactment of a rule as to practice which has long prevailed in courts of equity.
The question, then, is, whether the plaintiff, as a creditor, has stated a title for the relief which he claims against the defendants. His case, according to the complaint, is, briefly, that property, the proceeds of the sales of which were pledged and appropriated for the payment of the city debt, has been sold for less than its value, and that, in making the sale, precautions provided by law for securing an adequate price have not been taken. This, and the charge that an office-holder under the city government, who was prohibited by law from being concerned in the purchase of city property, was interested in this purchase, constitutes the whole of the case. It is not stated that there has been any default in the payment of interest, or that the principal of the debt has become due, nor that the debt is in any way insecure, nor that the plaintiff is under any apprehension that he will sustain a loss. It is, indeed, averred that the debt of the corporation is much larger than its property; but public or municipal debts are not based upon accumulated property, but on the faculty of taxation and the pledge of the public faith.
It will be necessary to ascertain what legal rules apply to the issuing of grants of this kind, namely, of land under water; and, upon a careful examination of the ordinance relating to the sinking fund, it will be perceived that they are distinct from those which regulate the sales of other real estate. Sections 11 to 16, inclusive, of title 4, relate to such grants. The property not required to be put up at auction, and no previous notice is necessary to be given of the time and place of sale, as is the *Page 328 
case where other real estate is sold. With the exception of grants to be made in certain specified localities to be immediately noticed, the price is to be arrived at by a report of the Comptroller and Street Commissioner, confirmed by the Commissioners of the Sinking Fund. But a section of the shore of the North river is excluded from the operation of that provision, and it is declared that the rates to be charged for grants in that locality, which includes the premises in question, shall be those specified in a schedule contained in section 12. By that schedule the grant in question was to be charged for at the rate of $14 per running foot of the westerly line of the Eleventh avenue. The length of that line is not given in the description of this grant, but the length of the westerly line of the grant, which is the Thirteenth avenue, is eight hundred and seventy feet and seven inches; and as the figure of the parcel granted shows that it increases in width as it extends towards the centre of the river, it is clear that the price obtained was many times greater than that which would result from applying the data mentioned in the ordinance. The value of this interest had doubtless greatly increased since the adoption of the ordinance. It does not follow from its provisions that the Common Council or the Commissioners of the Sinking Fund could, in good faith, or without exposing the members to grave responsibilities, dispose of these rights at the prices mentioned in the ordinance, if other persons could be found, after reasonable notice or inquiry, who would pay more. The sum mentioned in the schedule should, I think, be regarded as a minimum; but there was no provision for a public sale or for competition; and the duty imposed upon the city officers was similar to that which attaches to any one clothed with authority to dispose of property at private sale not below a given price. But the precise directions of the ordinance — which apply to grants not within the section referred to, and to sales of real estate other than land under water — by which the price is to be determined, have no application to those grants of land under water at the place where the one in controversy is located. The averments, therefore, that no appraisement was made *Page 329 
according to the ordinance; that public notice was not given; and that there was no auction sale, are inapplicable, and have no tendency to show the grant to be illegal. They would have been material in connection with an averment of collusion between the officers who made the sale and the purchaser, and a conspiracy to defraud the city by passing the grant for an inadequate consideration; but there is no charge of want of good faith on the part of any person concerned. The statement that the property was of far greater value than the price given, and that some good judges estimated it to be worth $300,000, unconnected with any charges of illegality or of fraud or collusion, does not raise any material issue. The only departure from the provisions of the ordinance, which I can discover, consists in the reservation of interest at the rate of only six per cent, when the ordinance expressly requires that seven per cent should be reserved upon all bonds and mortgages taken upon grants made by virtue of the ordinance. I have not heard any answer to this allegation of illegality.
I am of opinion that Mr. Draper, as a Governor of the Almshouse, was forbidden by the city charter to be concerned in such a purchase. The persons prohibited from being in any way interested in the purchase of any real estate or other property belonging to the corporation are the members of the Common Council, heads of departments, chiefs of bureaus and their deputies and clerks, and any "other officer of the said corporation." (Laws of 1849, p. 483, § 19.) The almshouse department is a branch of the city government, and Mr. Draper was one of its heads or chief officers (id., § 17). If there could be any doubt as to this, he is certainly an officer of the corporation. There is, of course, a far stronger reason for prohibiting members of the Common Council and the Commissioners of the Sinking Fund from being interested in such sales, in which they would have a direct agency by virtue of their offices, than for attaching the disability to one filling the position held by the defendant Draper; but the legislature thought fit to extend it to all the corporation officers, including, of course, the Governors of the Almshouse, and we cannot *Page 330 
make an exception. I do not, however, see that the plaintiff has any rights growing out of the violation of the statute in this respect. It is not charged that the grant was made for a less consideration because Mr. Draper was interested, or that the sinking fund has suffered any detriment on that account. It may well be that the city could maintain an action to impeach the conveyance, as being made contrary to law in this respect. But the plaintiff was not in any sense a party to the conveyance, and is not concerned to vindicate the law, unless it can be shown that his pecuniary interests have been injuriously affected. The averments fall short of stating such a case.
This brings me to the consideration of what I conceive to be a fatal defect in the plaintiff's case, putting it in the aspect of a suit by a creditor. He has no specific or general lien upon this property. He has, no doubt, an interest; and I think he has such a legal right to have the funds mentioned in the ordinance correctly administered, in order to subserve the purposes for which they were designed, as might be enforced by the courts, in a proper case. But the title of the city property, including that which was the subject of this grant, was in the corporation. The creditors have not even an equitable title. The duty of the city officers, entrusted by the sinking fund officers with its disposition and management, is a public governmental duty, and not a private one, for which they are generally responsible to the creditors; but if they do an act which produces injury to them, and which cannot be justified as the exercise of a discretion with which they are clothed, the individuals are, no doubt, responsible; and so, if an act is threatened, the direct and necessary tendency of which is to deprive the creditors of their security to an extent which will hazard the realization of their demands, the law, in my opinion, will afford a preventive remedy. But the complaint in this case does not present any such features. It assumes a right, so far as the plaintiff's claims as a creditor are asserted, to question any sale of the portions of the city property referred to in the sinking fund ordinance, as though it was subject to an equitable *Page 331 
lien in their favor, whether their pecuniary interests are actually prejudiced or not. Such a view of their rights cannot be sustained.
I am in favor of affirming the judgment of the Supreme Court.
DAVIES, J., took no part in the case; JAMES, J., dissented from so much of the preceding opinion as holds Draper, a Governor of the Almshouse, to be within the statute prohibiting city officers from having an interest in the purchase of corporation lands: all the other judges concurring,
Judgment affirmed.