Fithian, J.
Formerly, when writs of injunction were not so easily obtained as at present, courts of equity in England and this country were accustomed to adhere to *11 certain well-established rules and principles in granting or refusing the writ, to some of which I will briefly refer.
In the first place, a suit in equity is in theory an exceptional and extraordinary proceeding, and maintainable only in cases where there is no other remedy. If a complainant has at common law or by statute a clear right, or is threatened with manifest wrong and injury in a case where that right cannot be fully enforced, or such wrong and injury completely and fully redressed in an ordinary action at law, then the party may invoke the aid of a court of equity. The writ of injunction is the instrumentality by which the power and authority of courts of equity are enforced. It is of a two-fold character, “preventive” and “remedial”—the one to restrain and prevent a threatened wrong and injiuy, and the other to command and enforce what equity shall finally determine and decree in the action. . And where the object of a suit in equity is to obtain the aid of this writ, it must appear :
First. That it is a case where a suit in equity is maintainable, that it is one in which no adequate remedy can be had in an action at law. This must clearly appear from the facts stated in the complaint, and formerly it was necessary expressly to allege it in the pleading.
Second. It must appear from the facts stated in the complaint, assuming them to be true, that the complainant has a clear right to the judgment or relief demanded in the suit. If the statements be obscure, or the right left in doubt or uncertainty, the writ cannot issue.
Third. If an injunction be sought pending the litigation, before final decree or judgment, it must further appear that the whole or part of the relief sought in the action is to restrain some act, the commission or continuance .of which, pending the litigation, will injure the plaintiff (irreparably, it was formerly held), or that the defendant is doing or about to do some act which would render the final decree of the court ineffectual.
These are established and elementary principles of the law of injunctions, incorporated into the Code of Pro *12 cedure and affirmed by a uniform series of j udicial decision for many years.
Assuming then that this action is'in its nature one of equitable cognizance, do the facts set forth in the complaint show a clear right in the plaintiff to the relief or judgment sought ? It is claimed they do not, but that upon the facts stated in the complaint, the only right which the plaintiff alleges to be withheld from him, is the right to have due notice of and participate in ■ the meetings of the board of supervisors; and with' this right it is not pretended the defendant Connolly has in any way or manner interfered, or threatened to interfere. And that the only damages or inj ary plaintiff could -or would sustain, by reason of the doing of the acts threatened by the defendant (signing warrants), supposing all the allegations of the complaint to be true," would be such damages only as he might, in common with all the other tax-payers of the city, indirectly and incidentally sustain in consequence of public moneys being illegally paid out of the treasury. That this is not such personal damage or injury-as will authorize the plaintiff to maintain his action is settled by the case of Doolittle v. Supervisors of Broome County (18 N. Y., 155). In this case, the court of appeals held, upon a careful examination and review of all the decisions, that in respect to wrongs and injuries affecting the public at large, whether-actually committed or apprehended, the remedy, whether civil or criminal, is by a prosecution instituted by the State in its political character, by the attorney-general or some other officer authorized to act in its behalf. That Where a wrong committed against the public also includes a private injury, the latter may be prosecuted at the suit of the party injured. But where there is no direct individual injury, no action can be maintained by a citizen on the ground that his interests as a member of the body politic have been interfered with or disturbed. And this because (say the court), if a citizen may maintain an action for such a purpose in respect to his rights as a voter or tax-payer, the courts may regularly be *13 called upon to revise all laws that may be passed. They may, at the instance of any tax-payer, be required to enjoin the comptroller from drawing warrants on the treasurer, and that officer from paying them, &c. And this at the suit of any, and as many tax-payers as may choose to litigate. The law does not afford such an opportunity for excessive litigation, and to the same effect is the case of Roosevelt v. Draper (23 N. Y., 318).
The complaint in this case, however, does not contain facts sufficient in my opinion to show even a public wrong threatened by the comptroller. It refers to the act of the legislature passed May 12,1869, entitled “An Act to make provision for the government of the county of New York,” and alleges that by the provisions of that act the board of supervisors were ordered and required, as soon as convenient after its passage, to “order and cause to be raised” by tax, on the taxable estates of the city, according to law, and “to be collected according to law,” large sums of money in said act particularly specified and for the purposes therein specified. The complaint then charges that at this alleged illegal and unauthorized assemblage of supervisors, those present assuming and pretending to act by authority of that statute, “voted appropriations to a very large amount for the several purposes mentioned in the enactment,” thereby pretending to create a liability against the county, which fictitious pretended liability the comptroller was about to acknowledge and liquidate.
By reference to the statute cited, it will be seen that it is an act authorizing and requiring the board of supervisors to do what they are prohibited by law from otherwise doing, viz : To raise by tax in the usual mode and manner money for county expenditures in the amounts, and to be expended when raised for the particular purposes specified in the act. The pleading alleges that, at the meeting complained of, the supervisors, assuming to act by the authority of this statute, voted “appropriations ” for the several purposes therein mentioned. By the term “ appropriations ” I understand the pleading to *14 mean, that the supervisors voted to raise by tax the sums of money authorized by the statute for the “ several purposes mentioned therein.” If the pleading does not mean that, it is wholly unintelligible.
Now it is well known, and the court must take judicial notice, that, by the law of the State, it is impossible to levy and collect a tax “according to law” so as to have the money in the treasury between the 17th of September and the making of this motion. It follows, therefore, from the allegations in the complaint, that there is not, and cannot be, any moneys in the hands of the comptroller subject to the orders of the board of supervisors under the statute referred to. And what the defendant has not got he cannot very well wrongfully or rightfully disburse. It was well known, however, that the practice is for the comptroller to anticipate by temporary loans the amount directed to be raised by tax in order to meet current expenses while the tax is being assessed, levied and collected. But even if the complaint had alleged this fact, and that the money was in the hands of the comptroller, and that he was about .to pay as stated in the complaint, it would be merely an intent on the part of the defendant to pay in anticipation or advance moneys which the legislature had declared should be raised and paid and for the purposes provided by law, and the authority to do, which the board of supervisors are peremptorily, and without any discretion whatever, ordered to confer. If the board of sup ervisors willfully omit or neglect, or from informality or irregularity of meeting, or other cause, fail to perform the duty expressly devolved upon them by the statute, and the comptroller assumes, without the authority of the board, to do that which the legislature, in the constitutional exercise of its sovereign power, had commanded die board of supervisors to authorize him to do, a court >f equity will not interfere to restrain the act; because ■such an act, although technically without authority, by •eason of the omission of some intermediate link in the :hain, could not from its very nature be a wrongful or *15 injurious act in respect to the public or any individual.
Assuming the comptroller to be in funds properly applicable to the purposes specifically provided for by the statute, it becomes the imperative duty of the board of supervisors to authorize that application ; and, if they omit to do so, courts of law and equity, instead of restraining the comptroller, would compel the supervisors at once to authorize or ratify such acts, as the case may be. If this complaint had charged that the comptroller threatened or was about to expend moneys from the treasury in excess of the amount authorized by law to be raised and disbursed, or for purposes other than those specified in the act, or was about to pay any particular claim or demand against the county the amount of which was required by law to be first audited and allowed by some other person or board, without such audit or allowance, it would present an entirely different question.
It suffices to say, however, there are no such allegations in the complaint, .and the case as made does not, in my opinion, call for or warrant the interference of a com t of equity. Or in technical language, the injunction should be refused for “want of equity in the complaint.”
It is apparent that the real grievance for which the plaintiff seeks redress here is not any wrong or injury to the public at large, or to himself as a citizen or taxpayer, but to the wrong and injury which he has and may sustain by the alleged wrongful act of his associates in surreptitiously and indirectly attempting to exclude him from his clear right of being present at the meetings and participating in the proceedings of the “board” of which lie is a member. In this respect, however, the plaintiff has mistaken his remedy. His ■proceeding should be directly against tl e offending supervisors themselves, collectively or individually, or both. And then the question as to the respective lights, privileges, duties and powers of the supervisors, in regard to the manner and time of meeting, the notice re *16 quired, if anjr, and the authority to act when met, would be directly up, and could be examined and fully determined by the court. On this application I have not deemed it necessary to examine or express any opinion upon these questions ; but I have assumed in favor of the plaintiff that the meeting of the supervisors of which he complains was without authority.
The motion must be denied, but without costs.