Learned, J.
This is an action brought by ten persons who are members of the common council of the city of Albany, against the remaining six members, the marshal of the city and two persons acting as his as *412 sisfcants. The object of the action is to restrain by injunction the six defendants, members of the common council, from meeting and acting as a minority of that body, and to restrain in like manner the marshal and his assistants from arresting the plaintiffs, and from executing any jDrocess issued by the other defendants towards compelling the attendance of any member of the common council at any meeting thereof.
By the charter of Albany (1 Laws of 1870, 165, tit. 3, § 6), a smaller number than a majority of the aldermen elect may adjourn from time to time, and may compel the attendance of the absent members. By section 7'of the same title, the common council shall ‘ ‘ biennially appoint its clerk and designate the time and place of meeting.” By title 6, section 17, no law, ordinance, by-law or regulation shall be rescinded or repealed, unless by a two-thirds vote of all the. members elected.
At a meeting of the common council held May 13, 1872, they adopted among other rules of order the following :
“ Rule 37. The regular meetings of the board shall hereafter be held on the first and third Mondays of each month. x
‘1 Rule 34. Ro rule of this board shall be altered, suspended or rescinded unless by a two-thirds vote of all the members elected ; and no motion to alter, suspend or rescind any such rule shall be in order without the unanimous consent of the board, unless notice thereof shall have been given at the previous regular meeting. ...
“Rule 32. In case a less number than a quorum of the common council shall convene at any regular or special meeting, . . . the majority of the members of such common council present are authorized to send the city marshal or any other person for every or all absent members as such majority of members shall agree. Such city marshal or other person so authorized shall *413 have power to arrest such absent member or members and detain him or them until discharged by the common council.” ...
These rules have not been altered, suspended or rescinded, unless the action hereinafter mentioned may have had that effect.
At a regular meeting of the common council on the third Monday (the 17th) of June, 1872, a motion was made that when the board adjourn it shall adjourn to meet again on the first Monday of October next. One of the aldermen objected to the motion, but it was entertained by the president and passed by a majority vote. One of the aldermen then objected that the motion required a two-thirds vote of all the members elected, as it was virtually a suspension of Rule 37, but the president decided that a two-thirds vote was not required. On appeal from his decision, such a decision was sustained by a tie vote. No previous notice of this motion had been given.
On the third Monday of July, 1872, the six members of the common council, who are defendants, met at the usual hour and place of meeting of the board, claiming to do so by the authority of Rule 37. As there was less than a quorum present they adjourned to the next day at the usual hour and place. On that day (July 16), and at the usual hour and place, these six defendants met, claiming to be a minority of the common council assembled at a regular meeting of the board. They then passed a resolution requiring the city marshal and two other persons (the remaining defendants), forthwith to arrest the other members of the common council (the present plaintiffs), naming them, and to bring them to the meeting of the common council. The marshal and his aforesaid assistants, after an interval, reported their inability to find these persons. Thereupon the meeting adjourned to the next evening, with instructions to the marshal to notify every member *414 of the adjournment, and to inform him that if he failed to attend he would be arrested. Before the hour of meeting on the next evening this action was commenced and a preliminary injunction granted, with an order to show cause why it should not be continued. That motion is now made. It ought to be noticed in the outset that two things are sought by this complaint which are quite distinct. The one is the restraining of the six members of the common council from meeting as a minority; the other is the restraining defendants from arresting the plaintiffs. Some confusion has arisen in the discussion of the motion from a failure to distinguish clearly between the two alleged causes of action. So far as the threatened arrests are concerned, that alleged cause of action is clearly personal to each of these plaintiffs as individuals, while an alleged illegal meeting of a part of the common council is as clearly a matter in which these plaintiffs have no interest different or distinct from that one of any other citilens of Albany.
The first question, then, is this : Can several individuals unite in an action and restrain by injunction a number of persons who threaten them with illegal arrest ?
I am not aware that injunctions are granted to restrain threatened arrests; and this is for a very good reason. If a person is illegally arrested, he has the prompt and efficacious relief by habeas corpus; and he has also redress from the wrong by an action of damages. Injury by an illegal arrest is not of such an irreparable nature that it cannot be compensated in damages. It is true, that injunctions are sometimes granted where other remedies exist. But generally those are cases where the other remedy would be inadequate ; not where, as in this case, the other remedy is ample. Ho authority was produced in the argument for an inj auction to restrain threatened injury to the *415 person. In one case (Wood v. Brooklyn, 14 Barb,, 425), an injunction, among other things, restrained an arrest. But that was a case in which the arrest was part of the enforcement of a license law, and the enforcement would have destroyed the plaintiff’s business.
But there is another difficulty as to this cause of action. These plaintiffs have no joint claim or interest in respect to their threatened arrest. The arrest of each, if made, would be an individual and personal matter. There is, therefore, no propriety in their uniting in an action to prevent threatened injuries which would be several and individual. It was said that equity interferes to prevent a multiplicity of suits. But several parties who had been- separately arrested could not unite in an action for false imprisonment. On what ground, then, should they unite to prevent separate and several arrests? If these plaintiffs should be severally arrested, and if such arrests should be (as they claim) illegal, each would have a cause of action against the parties making the arrests. But these causes of action do not now exist, and may never arise. And the equity principle of preventing a multiplicity of suits has, I think, no application to this case.
It is said that the city marshal is of small pecuniary means. But if he is the agent of the six aldermen, defendants, and acts by their direction, I suppose they are liable for his acts, if illegal. And at any rate, the insolvency of a person who threatens to make an arrest cannot be ground for an injunction to restrain him.
So far, then, as the injunction restrains the defendants from arresting the plaintiffs, I am clearly of the opinion that it ought not to continue.
The second object of the complaint is to restrain the six aldermen from meeting as a minority of the common council. This action, it is to be observed, is not brought by the city, nor is the city a party to it. The *416 plaintiffs, although in fact aldermen, do not represent in this action the city or the common council, but sue only in their individual capacities. That they are the majority in number of the common council gives them no peculiar right of action. Assuming for the present that the meeting of the six aldermen was illegal, there has been no meeting of the majority as a common council authorizing and directing this action. The action is brought by the plaintiffs as individuals. If it can be maintained by ten plaintiffs, it could be maintained by one. Hor am I able to see that the aldermen of a city, as individuals, have any right to maintain such an action as this, other than that which any citizen or citizens would have. It might be very suitable for them to act on account of their position, but so far as the legal capacity to maintain the action is concerned, that must depend on their character of citizens. And the question then is, can a citizen maintain an action to restrain the aldermen of a city, or a part of them, from acting as a common council, even assuming that their action as such is illegal. It seems to be decided in our highest court that he cannot.
In the case of Doolittle v. Supervisors (18 N. Y., 155), it it is said, “If the grievance consists in an alleged illegal exercise of official functions, those who question them, if they would have a preventive remedy, must invoke the action of the officer whom the law has appointed to sue in such cases. Ho private person or number of persons can assume to be the champions of the community, and in its behalf challenge the public officers to meet them in the courts of justice to defend their official acts.” In Roosevelt v. Draper (23 N. Y., 318), it is again said, “We have decided upon full consideration that it requires some individual interest, distinct from that which belongs to every inhabitant of a town or county, to give the party complaining a standing in court, where it is an alleged delinquency in the *417 administration of public officers which is called in question.” These are cases, it is true, where the acts complained of as illegal were done by a majority of the body. The question of their illegality turned on other facts than the number of the body who assembled. But the principle seems to apply here. These six aldermen, defendants, claim to be acting in their official capacity. They claim that the meeting which they held was a meeting of the common council, competent indeed only to adjourn and to compel the attendance of others. But as to those acts, they claim to be acting not as an accidental assemblage, but as the legal body.
It is said by the plaintiffs, that the threatened arrests give them a private, personal interest in the matter, aside from the common interest of the public, and that therefore they have a right to maintain this action which others have not (Milhau v. Sharp, 27 N. Y., 611). But I have already shown that injunctions are not granted to restrain threatened arrests. Even, therefore; if the plaintiffs have been threatened, that threat does not give them a right to maintain an action for an injunction ; still less could it be said to give them a personal or private interest in a public matter. There is no property in the probability of being arrested.
The union of law and equity in one tribunal and under one form of action, has obscured the line which used to limit cases in which injunctions would: be granted. A vague feeling has arisen that whenever a defendant is acting illegally, he should be restrained. The feeling has developed into practice to some extent, but it has not and probably never will become principle. Enough, however, has already been done to make the public uneasy at the frequent granting of injunctions. This modern custom is incorrect. Injunctions should not be granted unless they are necessary. A preliminary injunction, in many instances, as in this, *418 operates as a decision of the whole question before trial, .so that a plaintiff who has obtained a preliminary injunction has substantially gained his cause. It is a mode of relief not to be encouraged when other remedies are substantially sufficient.*
In the examination of this case thus far I have assumed that the proceedings of the defendants were illegal, and I have inquired only whether the plaintiffs had the right, to maintain such an action on this assumption. Being confident that the action cannot be maintained, I need not examine whether the proceedings of the defendants were or were not legal. On that, therefore, it is unnecessary here to express any opinion. In the view which I have taken, that point is not involved.
Perhaps, without impropriety, I may add a suggestion -to both parties, plaintiffs and defendants. It is well known that this controversy grows out of political disagreements. Whether one side is to blame or the other, or both, it should be remembered that all hold their offices, not for party purposes, but as the name implies, for the “ common” welfare of the city, and it is not a mere play upon words to say that a “ council ” indicates conciliation.
The motion to continue the injunction must be denied, and the injunction, if any exists, vacated, with ten dollars costs of motion.

See, on this sabject, Van Veghten v. Howland, in the latter part of this volume.