Allen, J.
The plaintiffs appeal from a judgment against them in the Supreme Court, upon a demurrer to their complaint, in an action brought by them as tax-payers of the town of .Milo, in the county of Yates, in their own behalf and in behalf of all other tax-payers of the same town who are similarly interested in the cause of action, and who shall come in and contribute to the expense of the suit. The action is against the commissioners of the town, appointed under the provisions of chapter 907 of the Laws of 1869, authorizing municipal corporations to aid in the construction of railroads, and the acts amending the same, and the Sodus Bay, Corning and New York Railroad Company, a corporation formed under the laws of this State, to restrain the issuing of the corporate bonds of the town in aid of the construction of the road of such corporation. Sundry defects, irregularities and illegalities in the consents of the tax-payers, and in the proceedings for the bonding of the town and the pledging of its credit and resources, are averred in the complaint and admitted by the demurrer, aside from the claim that the legislative authority is void, as unauthorized by the Constitution, and ultra vires ; so that, for all the purposes of this appeal, it must be assufned that the proceedings are invalid, and the issue of the bonds, as contemplated and threatened, unauthorized by law.
This is the first instance in which the act of 1872 (chapter 161), for the protection of tax-payers against the frauds, embezzlements and wrongful acts of public officers and agents, has come under review by us, or has been relied upon to sus *195 tain an action. The complaint was verified a little more than twenty days after the act became a law, and before it had been very generally promulgated or its provisions become known.
. The circumstances under which the law was enacted, the mischiefs it was designed to remedy, and its general purpose and object, are well understood, and, so far as these circumstances can legitimately aid in its interpretation, they should be taken into consideration. Municipal corporations had become to an alarming extent the prey of the spoiler, and the tax-payer, upon whom the loss fell and the burden of the wrong-doing ultimately rested, was remediless. The wrong was ordinarily accomplished not by a waste or destruction of the property or funds of the corporation in actual possession, but by the issue and sale of the bonds or other obligations of the municipality, and a conversion or misappropriation of the proceeds. It was by abuse or misuser of the credit of the corporation, creating a lien upon its property if it had any, but especially pledging its future resources, and the power of taxation vested in the municipal government, that the funds and property of the corporation were wasted, and the taxpayer burdened and his property incumbered. By the rules of law, as established by the courts, the tax-payers were entirely without remedy, no matter how gross the fraud or wanton the robbery, and notwithstanding the officers of the corporation, those whom the law had put in authority to watch over and protect their constituents and guard their interests, were faithless to their duty or confederate with the wrong-doers. (Roosevelt v. Draper, 23 N. Y., 318.) hieither was there authority in the State, by its attorney-general, to intervene by action to protect the property rights and interests of municipal corporations. (People v. Ingersoll,* People v. Field,† MS. opinions in this court.) This utter helplessness of the tax-payer, and the fact that he was entirely at the mercy of officials who might prove unworthy of and criminally unfaithful to their trust, became an evil calling loudly *196 for correction. Frauds had been accomplished and municipalities wasted and burdened without redress, and the act was passed with a view to remedy the felt defect in the law, and give the tax-payer a concurrent action with the corporation for the prevention or correction of the wrongs mentioned in it. The rules for the interpretation of acts thus benevolent in their purpose and remedial in their character are very familiar, and to disregard them and. adhere to the letter instead of giving effect to the benign intent of the act, would be grossly unjust not only to those whose interests need protection, but to the legislature, whose intent would be frustrated. In the construction of laws of the character of that under consideration, too much stress should not be laid on the strict and precise signification of words, but they should be construed liberally, with a view to the beneficial end proposed, to wit, the suppression of the mischief and advancement of the remedy. (Weed v. Tucker, 19 N. Y., 422; Olcott y. Tioga R. R. Co., 20 id., 210; Hudler v. Golden, 36 id., 446.) The scope and general intent of the act is well expressed by its title: “ for the protection of tax-payers against the frauds, embezzlements and wrongful acts of public officers and agents; ” and the language of the body of the law is sufficiently comprehensive to embrace every wrong by which tax-payers may be prejudiced, as wnthin the purview of the act, if not within the literal and precise meaning of the words. It is not intended to intimate that the wrongful act sought to be enjoined in this action is not within the very terms of the act. I think it is. But if there should be a difference of opinion as to the • applicability of the words, the broad and comprehensive terms of the title may serve to remove all doubt "that the legislature intended, by the" language of the act itself) to provide ample remedy and protection to the taxpayer against all wrongful acts of public servants and agents affecting the property rights of the corporation, or its pecuniary obligations, to the prejudice of the tax-payers.
The title of an act may assist in removing ambiguities and show what was in the minds of the legislature. (United *197 States v. Fisher, 2 Cranch, 358; Same v. Palmer, 3 Wheat., 610.) The legislature was careful to embrace within the act and subject to its provisions every grade and class of municipal servants acting officially or otherwise. The act declares that all officers, agents, commissioners and other persons acting for and in behalf of any county, town or municipal corpo' ration, may be prosecuted and actions maintained against them for the prevention of waste or injury, etc., and it cannot be supposed that while every agency and instrumentality of wrong was in the mind of the legislature the most dangerous and common means and process for accomplishing the wrong-should be omitted from the carefully considered and devised preventive remedies given by the act. The language of the act in specifying the causes for which an action is given is broad and comprehensive and is not used in a technical or restrictive sense. An action is authorized against any person acting for or in behalf of a municipality by whose acts the corporation or its tax-payers may be injured in its property rights or pecuniary interests “ to prevent waste or injury to any property, funds or estate, of such county, town or municipal corporation.” Waste has a technical meaning when it is used to denote spoliation or destruction to lands or other corporeal hereditaments by a tenant to the prejudice of the reversioner or remainder-man; but it is not unfrequently used in a different and more comprehensive sense and may be applied to any squandering or misapplication of property or fund by trustees or others charged with a duty, or any abuse of trust or of duty by which property is lost or an estate or trust fund diminished in value. A devastavit by an executor or administrator is defined to be a wasting of the assets and may consist of any act or omission, every mismanagement, by which the estate suffers loss. (2 Wms. on Exrs., 1629 et seq.) The term waste, as used in the act, includes every wrongful act of mismanagement of the property rights or interests of the municipality causing the loss or damage. The word “ injury ” includes every wrong, every thing that is not done rightfully. Under this term every act in violation of *198 right is included. (3 Bl. Com., 2.) And within the terms of the act every pecuniary interest and right which could be wasted, that is, destroyed, mismanaged, misappropriated or misapplied, or that could be injured by the unauthorized or wrongful act of public servants or agents to the damage or loss of the corporation or the tax-payers, is included. The prevention of waste or injury “ to any property, funds or estate ” of such county, etc., is the declared purpose of the act. Those words, upon a fair and reasonable interpretation, embrace not only property and funds in possession but the credit and the power of taxation and of borrowing money in anticipation of taxation, and every process and means by which the municipal corporation can be charged pecuniarily or the taxable property within its limits burdened. Municipal corporations seldom have property, funds or estates in possession to be wasted or injured save the taxes collected or in process of collection, for the purposes to which they are appropriated. The terms are inapplicable in their most usual and ordinary sense to the property rights and pecuniary interests of a municipal corporation. The legislature have used several words for the sole purpose of embracing every right and interest which might need protection, and in the protection and right use and application of which the tax-payers would have an interest. The word “property” denotes the interest one may have in lands and chattels to the exclusion of others. “Bunds” may mean cash on hand, stocks, etc., and when “public funds” are' referred to, taxes, customs, etc., appropriated by the government to the discharge of its obligations, are understood. It is a name also given to the public funded debt of the government, and in the latter sense a municipal obligation and public debt, created by or in the name of the local or municipal government, may be regarded as technically within the term “ funds ” of the corporate body. The word “ estate ” has several meanings, and in its most extreme sense signifies every thing of which riches or fortune may consist. (Whar. Law Dic. ; Bouv. Law Dic. ; Ketchum v. City of Buffalo, 4 Kern., 356.) The terms used, in the *199 connection in which they stand, cannot, without an utter disregard of the rights that were intended to be preserved and protected be held to mean any thing less than every interest and right affecting the burdens, the pecuniary interests, the credit, or the obligations of the municipality, and it would be a perversion of the act to give the language a restricted interpretation, which would place beyond its protection the power of creating a public debt. The taxing power may be so exercised as to result in a waste or injury of the “ property, funds and estate ” of a municipal corporation, and the issuing of bonds of the municipality is but an exercise of the taxing power. The power of taxation and the pledge of the public credit as one form of the exercise of that power, is the use and application of the property, funds and estate of the municipality; and when the power to do either is exercised in violation of right, it is a waste and injury of the public property, funds and estate within the terms of the act. We have no right to give a hypercritical interpretation to a benign act, designed for the protection of the tax-payer in favor of the wrong-doer. Authority is abundant for giving an equitable interpretation to statutes, regarding the intent rather than the strict letter of the law, and so as to include cases within parity of reason, although not strictly within the letter. Administrators have been held to be within a statute only naming executors, and corporations are bound by statutes in Avhicli persons only are mentioned. (Smith on Stat., § 698 and cases cited in notes.) Courts, when they discern a thing within the mischief which it was the intention of the statute to remedy, that is within the intention of the legislature, hold that it must be considered as within the statute, and when a case arises that is out of the mischief intended to be guarded against, it will be held not to be within the statute. (Faw v. Marsteller, 2 Cranch, 10; Jackson v. Collins, 3 Cow., 89; Smith on Stat., § 705.) Mayor of New York v. Lord (18 Wend., 121), is an illustration of the rule authorizing an equitable construction of statutes. It was held by the Court for the Correction of Errors, affirming the judg *200 ment of the Supreme Court in same, case (reported 17 Wend., 285), that under the provisions of . 1 Revised Laws, 868, section 31, giving compensation to the owner of. a building destroyed by order of the mayor, recorder or aldermen of the city of Hew York, to arrest the progress of a fire, a tenant, who was not the owner of the building and not named, was entitled to compensation for merchandise destroyed with the building. The wrong and injury threatened in the case before us is within the spirit of the act, the mischief intended to be guarded against, and the clearly declared intent of the legislature, and within the language of the act, reasonably and fairly interpreted, in the connection and for the purpose for which it was used and the subject-matter to which it was applied. To hold otherwise would deprive the act of its chief value, as furnishing a preventive remedy for wrongs to municipal corporations. The legislature have made the bonds of municipal corporations a charge upon the real and personal property of such corporation, to . be assessed, levied and collected as other municipal charges are assessed, levied and collected. (Laws of 1870, chap. 300.) The taxable property of the municipality thus charged is treated in this legislation as the property of the corporation, and we may well infer that in the cognate statute under review, they used the wor<js “property, funds and estate” of the corporation in the same broad sense, and as including the property which, by statute, was charged as corporate property with the payment of the corporate obligations, viz., the real and personal property by law taxable for the payment of the municipal charges and obligations.. If so, then the issuing of a corporate bond without authority is an injury to the corporate property and funds.
An objection of a technical character is taken to the plaintiffs’ right to maintain the action. The plaintiffs describe themselves as residents of the town of Milo, and aver that they are tax-payers .of said town, liable to assessment and taxation therein, and that they were residents and tax-payers in said town, and owners of real and personal property liable *201 to assessment and taxation therein, before and at the time of the occurrence of the several acts mentioned in the complaint. The objection is dilatory, and, if well taken, only serves to delay the action, for the reason that if the complaint is defective, it is only in the merest matter of form, and is amendable. The statute gives the action to any person residing in the town assessed for and liable to pay taxes therein, or who has paid taxes therein within one year previous to the commencement of the action. The complaint does not embody the precise words of the statute, but the plaintiffs substantially bring themselves within the description of the act. They are residents of the town, and were during all the time of the transactions brought in review. They are tax-payers, and were tax-payers during all the. time referred to. Now, a taxpayer is one assessed for and liable to pay and who pays taxes. An individual is not a tax-payer who is not assessed or liable to pay them. The description of the plaintiffs in the complaint is as broad as that in the statute. They aver that they were and are liable to assessment and taxation, and actually pay taxes. A resident tax-payer, owning real and personal, property liable to taxation — that is, a taxable inhabitant, actually paying taxes — cannot be distinguished from one “assessed for and liable to pay taxes.” The Code (§159) requires the allegations of a pleading to be liberally construed, with a view to substantial justice, while to sustain the objection now taken would be to give it a strict and literal interpretation, with a view to delay and against substantial justice. We are also required, by section 176 of the same act, to disregard every error or defect in the pleadings which shall not affect the substantial rights of the adverse party. The plaintiffs will be compelled upon the trial to bring themselves, by proof, within the statute, and if they prove their averments they will entitle themselves to maintain the action. In Carpenter v. Dennis (3 Sandf., 305), it was held, Ch. J. Oakley delivering the opinion, that an allegation in the complaint that the plaintiff was “ engaged in the wooden ware business,” was equivalent to an averment *202 that he “ was a buyer and seller of wooden ware.” At common law, it was sufficient that the necessary matter be stated in substance and effect, although the precise words of a statute are not used. (1 Oh. Plead., 372.) We are not called upon to enforce a more rigorous rule; in hostility to tax-payers seeking protection against wrong-doers, than that recognized at common law, and before the more liberal rules prescribed by the Code were adopted. The plaintiffs have, in substance and effect, brought themselves within the description of the statute.
The judgment must be reversed, and judgment for the plaintiffs, with leave to the defendants to answer on the usual terms.
Church, Oh. J., Sapallo and Andrews, JJ., concur; Grover, Folg-er and Johnson, JJ., dissent.
Judgment reversed, and judgment accordingly.

 58 N. Y., 1.

 58 N. Y., 491.