Robert Govers, Appellant, v. The Board of Supervisors of Westchester County et al., Respondents.

1. Supervisors — Power to Locate Township Boundaries. The ascertainment and location by the board of supervisors of a disputed boundary line between two towns within the county, which was established and settled by an early statute in accordance with and as laid down upon ancient designated maps, is authorized by section 36 of the County Law (L. 1892, ch. 686), providing that such boards may establish and define boundary lines between the several towns of a county.

2. Taxpayer's Action — Establishment of Boundary Line. The authorized action of county supervisors in ascertaining and locating a boundary line established and settled by statute between towns within the county by reference to ancient maps, cannot, in the absence of fraud, collusion or bad faith on the part of the board, be attacked by a taxpayer's action under section 1925 of the Code of Civil Procedure, providing that the action lies to prevent waste of or injury to the estate, funds or other property of the county, since the words "waste and injury" include only illegal, wrongful or dishonest illegal action.

Govers v. Bd. of Suprs. of Westchester Co., 55 App. Div. 40, affirmed.

(Argued May 16, 1902; decided June 10, 1902.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered December 1, 1900, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Hugh M. Harmer* and *David T. de Derky* for appellant. The power conferred upon the board of supervisors by the provisions of the County Law, section 36, only enabled them to establish and define disputed boundary lines between towns. The boundary line in question was not disputed; consequently the supervisors had no jurisdiction in the matter, their action was without warrant of law, and, therefore, an illegal official act, and should be set aside. (*Katz* v. *Kaiser*, 154 N. Y. 284; *Sherman* v. *Kane*, 86 N. Y. 57; *Baldwin* v. *Brown*,

16 N. Y. 359; *Reed* v. *Fair*, 35 N. Y. 113; *Ratcliffe* v. *Gray*, 3 Keyes, 510; *Hunt* v. *Johnson*, 19 N. Y. 279; *Jackson* v. *Van Corker*, 11 Johns. 123.) The provision of the County Law requiring publication of notice of petitions establishing disputed lines was not properly complied with, and the action of the board of supervisors was, therefore, taken without jurisdiction. (*Matter of Douglas*, 46 N. Y. 42; *Matter of Smith*, 52 N. Y. 526; *Matter of Penny*, 108 N. Y. 364.) A taxpayer's action is the proper one for obtaining the relief required. (*People ex rel.* v. *Bd. Suprs.*, 131 N. Y. 468; *Ayres* v. *Lawrence*, 59 N. Y. 192.) The petition of Shinn to the board of supervisors did not describe the line, which it was claimed was disputed, with sufficient particularity, and the board, therefore, had no jurisdiction to act. (*People ex rel.* v. *Bd. Suprs.*, 63 How. Pr. 411.)

*Henry G. K. Heath* for respondents. This court cannot review the facts. (Code Civ. Pro. § 191; *Genet* v. *D. & H. C. Co.*, 167 N. Y. 608; *Marden* v. *Dorthy*, 160 N. Y. 39.) The board of supervisors of Westchester county had power to determine the boundary line between the towns of Pelham and New Rochelle. (*People ex rel.* v. *Bd. of Suprs.*, 63 How. Pr. 411; *Clarkson* v. *H. R. R. R. Co.*, 12 N. Y. 304; *Johnson* v. *H. R. R. R. Co.*, 49 N. Y. 455.) No estoppel existed as against the town of Pelham. (Bigelow on Est. 61; *Spring* v. *Hewston*, 52 Cal. 442.) An erroneous conclusion when the board of supervisors has jurisdiction would not constitute waste or injury under the Taxpayers' Act. (*Osterhoudt* v. *Rigney*, 98 N. Y. 224; *Talcott* v. *City of Buffalo*, 125 N. Y. 280.) The plaintiff cannot maintain this action under the Taxpayers' Act. (*Ziegler* v. *Chapin*, 126 N. Y. 342; *Adamson* v. *N. R. Co.*, 74 Hun, 3; *Wilkins* v. *Mayor, etc.*, 9 Misc. Rep. 610; *Talcott* v. *City of Buffalo*, 125 N. Y. 280; *McCrea* v. *Cahoon*, 8 N. Y. Supp. 88; *Gallagher* v. *Keating*, 40 App. Div. 81; *Kingsley* v. *Bowman*, 33 App. Div. 1; *Webb* v. *Bell*, 22 App. Div. 314; *Bush* v. *Bd. of Suprs.*, 10 App. Div. 542; *Osterhoudt* v. *Bd. of Suprs.*, 98

1902.]     Govers *v.* Bd. Suprs. Westchester Co.          405

N. Y. Rep.]      Opinion of the Court, per Bartlett, J.

N. Y. 239.)   The action of the board of supervisors was
reviewable by certiorari.   (1 Fiero on Spec. Pro. § 329; *Peo-
ple* v. *Suprs. of Westchester Co.*, 57 Barb. 377; *People* v.
*Bd. of Suprs.*, 23 Wkly. Dig. 568; *People* v. *Bd. of Suprs.*,
131 N. Y. 468.)

Bartlett, J.   This action was brought by the plaintiff, as a
taxpayer of the village and town of New Rochelle, to have a
certain act of the defendant, The Board of Supervisors of the
County of Westchester, set aside, which established the correct
boundary line between the towns of Pelham and New Rochelle.

The trial judge filed a decision, stating concisely the grounds
upon which the issues have been decided, as permitted by
section 1022 of the Code of Civil Procedure.

After stating certain details that will be alluded to later,
the trial judge held that the board of supervisors assumed
jurisdiction and passed an act defining the correct location of
the line referred to in the Laws of 1870 (Chap. 782), entitled
"An act to establish and settle the boundary between the
towns of New Rochelle and Pelham, in the county of West-
chester."   This act provides as follows : " The boundary line
dividing the towns of New Rochelle and Pelham, in the
county of Westchester, being the northeast boundary of Pel-
ham, and the southwest boundary of New Rochelle, is hereby
fixed, established and settled in accordance with, and as laid
down upon, the map made by Captain Bond, in the year seven-
teen hundred and eleven, and on file in the town clerk's office
in the town of New Rochelle, and as laid down on a copy of
the said map made by James Davenport, in seventeen hundred
and ninety-eight, and now on file in the office of the state
engineer and surveyor."

The County Law (Chap. 686 of the Laws of 1892, § 36)
provides, referring to the board of supervisors, as follows :
" Such board may establish and define boundary lines between
the several towns of a county."   The remainder of the sec-
tion regulates the practice of the board in exercising this
power.

The decision closes with these words : "It was disputed, whether justly or unjustly it is not for this court to determine, and I do not think the Town of Pelham was estopped from making the dispute, because it had acquiesced for a number of years in what it then claimed to be an erroneous boundary line. A liberal construction should be placed upon Section 36 of the County Law, and when the correctness of the boundary line between these towns was disputed, no matter under what circumstances, the board of supervisors, upon proper application, had jurisdiction to determine and define the line which in their judgment conformed to the line established by the act of the legislature."

It is to be observed that the legislature fixed the line between these two towns by reference to certain ancient maps. It is apparent that this determination of the legislature required an actual survey to locate the precise line established by these maps.

In 1872 the town of New Rochelle employed two engineers to locate this line, and the town of Pelham shared in the expense. This work was done by the engineers and a certain line ascertained, which was acquiesced in until the autumn of 1897, when the town board of Pelham petitioned the board of supervisors, under section 36 of the County Law, to locate the boundary line in question. Thereupon the board of supervisors undertook this task and received evidence, consulted the ancient maps referred to in the act of 1870, and located a line that was somewhat at variance with that fixed by the surveys of 1870, and awarded to the town of Pelham about fifty acres of land that had been improperly embraced within the town of New Rochelle under the former survey.

It appears in evidence before the board of supervisors that these engineers failed to examine the Davenport map, referred to in the act of 1870. The Bond map was made, as stated, in the year 1711, and the Davenport map was a copy thereof, made in 1798, and filed at Albany with the surveyor-general.

It appears by the report of the judiciary committee of the

board of supervisors that this map became a part of the town records of the town of New Rochelle and there remained on file for many years until it was finally lost or misplaced subsequent to the year 1870.

It further appears by this report that this Bond map was by reason of "great age and rough usage shrunken and crumpled up" and had been "torn and patched on the back thereof and repaired in several places." Owing to this condition of the map it was diffcult, if not impossible, for the surveyor to determine the scale upon which the map was drawn.

It also appears that notwithstanding the condition of the map of the year 1711 the surveyors failed to examine the copy of it which was made by Davenport in the year 1798, and presumably in much better condition.

This report deals at great length with the facts in this case and shows that the act of the board of supervisors, fixing this line, was passed after a most careful consideration of the facts and the law.

The Appellate Division having unanimously affirmed the findings of the trial court, the facts are settled in this court and we are confined to the questions of law properly before us.

This act of the board of supervisors was passed the sixteenth of March, 1898, and the taxpayer's action was not begun until the twenty-ninth day of the same month.

The appellant claims that this action of the board of supervisors was legislative in its character and unauthorized by law. Assuming that this was an act of legislative power, it is clear that the action of the board is not within the purview of section 1925 of the Code of Civil Procedure, providing when an action by a taxpayer may be brought against a public officer. That section, in substance, enacts that the action lies to obtain a judgment preventing waste of or injury to the estate, funds or other property of a county, town, city or incorporated village, and may be maintained against any officer thereof, or any agent, commissioner or other person acting in its behalf.

If the action of the board is deemed judicial, the remedy would be a review under a writ of certiorari and not a taxpayer's action. The functions of the board in a case like the present one seem to be a blending of judicial and legislative powers. It was required in the first instance to determine a question of fact and render a judgment thereon, which takes the form of an exercise of legislative power delegated to it by the legislature.

It is unnecessary to determine in this case the precise legal nature of the action of the board, as we are of the opinion that this record does not present a state of facts authorizing a taxpayer's action. This action involved no illegal act, or any fraud, collusion or bad faith on the part of the board, and the conclusion reached by the latter was in no legal sense a waste of the property of the town of New Rochelle.

The proper boundary line between these two towns was fixed by the act of 1870, in referring to the ancient maps, and the action of the board of supervisors was a mode adopted by the legislature to ascertain that line.

At the time this action was commenced the law enacted by the board of supervisors was in full force and effect, and the plaintiff was not in a legal position to attack it.

In *Talcott* v. *City of Buffalo* (125 N. Y. 280) it was decided that a taxpayer, under section 1925 of the Code, is confined to cases where the acts complained of are without power, or where the corruption, fraud or bad faith, amounting to fraud, is charged. The words " waste and injury " include only illegal, wrongful or dishonest illegal action.

We hold that the board of supervisors, in the case at bar, was empowered by the County Law (Laws of 1892, chap. 686, § 36) to ascertain and locate the boundary line fixed by the act of 1870, and that the plaintiff did not allege that its action was wrongful or dishonest.

We have examined the other points discussed by the appellant, which deal with the proceedings of the board of supervisors under the County Law, but deem it unnecessary to consider them in detail.

We agree with the disposition made of them and all other questions by the learned Appellate Division.

The judgment appealed from should be affirmed, with costs.

PARKER, Ch. J., GRAY, O'BRIEN, HAIGHT, MARTIN and VANN, JJ., concur.

Judgment affirmed.