Town of Irondequoit, Plaintiff, *v.* County of Monroe and Others, Defendants.

Town of Brighton, Plaintiff, *v.* County of Monroe and Others, Defendants.

Town of Pittsford, Plaintiff, *v.* County of Monroe and Others, Defendants.

County of Monroe, Plaintiff, *v.* Town of Irondequoit, Defendant.

County of Monroe, Plaintiff, *v.* Town of Brighton, Defendant.

County of Monroe, Plaintiff, *v.* Town of Pittsford, Defendant.

Supreme Court, Monroe County, May 2, 1939.

*Leo G. Rosenfeld*, petitioner, in person, in support of the motions.

*Harry Rosenberg,* for the county of Monroe.

*Robert W. Lochner,* for the town of Irondequoit.

*Edward M. Ogden,* for the town of Brighton.

*Block & Smith [Franklin H. Smith* of counsel], for the town of Pittsford, in opposition.

LAPHAM, J. These are motions by the petitioner as a resident and a taxpayer of Monroe county to intervene in actions brought by the towns of Irondequoit, Brighton and Pittsford, respectively, against the county of Monroe and in actions brought by the county of Monroe against these same towns. The purpose of the intervention, which is sought by the petitioner under the authority of subdivision 3 of section 193 and section 195 of the Civil Practice Act, is to protect the interests of the petitioner as a taxpayer as well as the interests of other taxpayers in the county.

All these actions grew out of the multitude of tax delinquencies in the early years of the depression. In the years immediately preceding 1933, the tax collector in the towns of Irondequoit, Brighton and Pittsford was unable to collect the full amount of the taxes which his warrant commanded him to collect for town purposes, and in 1933, upon the refusal of the Monroe county treasurer to advance these deficiencies to the towns, the towns of Irondequoit, Brighton and Pittsford instituted actions against the county of Monroe to recover the difference between the amount of taxes levied for town purposes and the amount of taxes actually collected and returned to the county treasurer, and principally the deficiencies of the 1931 and 1932 tax rolls. The Irondequoit action, which was deemed decisive of the Brighton and Pittsford actions because of identity of issues, was brought to trial before Hon. S. NELSON SAWYER as official referee and the taking of evidence was concluded early in October, 1933. During 1933 the county treasurer, in accordance with resolutions passed by the board of supervisors of the county, advanced moneys to the towns in the total sum of $1,396,000, which covers the deficiencies for which the towns had sued the county. On October 19, 1933, the Slater-Marks Act (Laws of 1933, chap. 833) became effective and this legislation required the towns to repay to the county all advances made by the county to the towns for town uses both prior to, and after, the enactment of the statute, or to deliver bonds to the county in the place of such payments. On May 11, 1935, amendments were added to this statute (Laws of 1935, chaps. 861, 862)

which altered without fundamentally changing the statutory liability of the towns to repay the county for these advances. In August, 1935, the official referee rendered his decision in the 'Irondequoit action (158 Misc. 123) which upheld the liability of the county to the towns for deficiencies on the tax rolls, except in so far as that liability was affected by the legislation of 1933. In December, 1936, the attorney for the town of Irondequoit and the attorney for the county of Monroe entered into a stipulation with the approval of the official referee holding the action in abeyance. No judgment has been entered in any of these actions brought by the towns against the county.

In June, 1937, the county instituted actions against the towns of Irondequoit, Brighton and Pittsford to recover money or bonds in the total sum of $2,601,050.91, exclusive of interest, which represented advances made by the county to these towns on certain tax rolls between 1928 and 1935, and which included the amount of tax deficiencies which the towns were attempting to recover from the county in their actions. These three actions brought by the county were tried before Justice EDGCOMB as official referee in December, 1938, and are now before him for determination.

The petitioner urges as a basis for intervention in the actions by the towns against the county that it is the duty of the county officials to carry the Irondequoit action to a final determination and that the failure of the county officials to enter judgment in this action has resulted in a sacrifice of the interests of the tax-payers of the county. The decisive answer to this contention is the existence of actions by the county against the towns which have been promptly and vigorously prosecuted and which, as the petitioner himself concedes, embrace the tax deficiencies which are the subject of the actions by the towns against the county.

The suits instituted by the county are more comprehensive in their scope and the judgments in these cases fixing the ultimate liability of the towns and county for the tax deficiencies will be *res judicata* on the issues in the actions of the towns against the county. The resolutions under which the county advanced moneys to the towns in 1933 did not commit the county to rest its whole case upon the Irondequoit action. Most of these resolutions, passed when the Irondequoit action was pending, referred explicitly to any action which might be subsequently commenced and all of them contained provisions which declared that no rights of town or county were waived in any degree by their enactment. One of these resolutions was shaped, in part at least, upon the assumption that further legislation might change the legal relationship between the town and the county in respect to the incidence of the burden

of uncollected taxes. (Proceedings of the Board of Supervisors, 1933, p. 193.) Legislation was passed (Laws of 1933, chap. 833; Laws of 1935, chaps. 861, 862) which defined with some precision the relationship between town and county in this field and the actions begun by the county were brought within the framework of that legislation in order to fix the nature and extent of the ultimate liability of town and county for tax deficiencies with some degree of finality. The towns have not interposed the defense that a prior action is pending between the parties, but they have asserted counterclaims for interest on deferred payments which they allege the county was legally bound to advance to them. The need of a complete determination of the liabilities of town and county in the interests of the orderly administration of fiscal affairs of both is obvious. That need has been met by the commencement and prosecution of the actions by the county against the towns. Intervention by the petitioner in the actions by the towns against the county would delay and impede the definitive solution which is the objective of the actions in which the county is the protagonist.

The application of the petitioner for permission to intervene in the actions brought by the county against the town rests upon a basis even more slender. He contends that the failure of the county officials to prosecute the Irondequoit action to judgment and their conduct of the actions in which the county is plaintiff, constitute a threat to the interests of taxpayers of the county. A brief chronology of the acts of the county officials is essential in order to set this contention in its proper perspective.

On December 18, 1935, the board of supervisors of the county passed resolutions directing the county attorney to institute individual actions against the towns of Irondequoit, Brighton and Pittsford to compel them to issue bonds to cover advances made by the county for tax deficiencies. (Proceedings of the Board of Supervisors, 1935, pp. 409, 410.) On January 2, 1936, these resolutions were rescinded. (Proceedings of the Board of Supervisors, 1936, pp. 5, 11.) On March 20, 1936, the board of supervisors authorized and directed the county legal adviser to commence legal proceedings against these towns to compel them to issue and deliver bonds for obligations due to the county under the provisions of chapter 833 of the Laws of 1933 and its amendments. (Id. p. 116.) In July, 1936, a non-partisan citizens' committee, appointed earlier that year to probe into town and county finances, reported its conviction that the best interests of the city, county and towns would be served, not through a resort to the courts, but through a courageous facing of the facts and the adoption of resolutions to make the recurrence of the delinquent tax situation

unlikely. On November 6, 1936, a resolution was passed by the board of supervisors authorizing the county legal adviser to discontinue the Irondequoit action and to refrain from bringing contemplated suits against the towns in the event that certain legislation was enacted to prohibit the towns from incurring any indebtedness without the consent of the board of supervisors of the county. (Id. p. 376.) In December, 1936, the stipulation suspending proceedings in the Irondequoit action was made. On April 1, 1937, a citizens' bi-partisan advisory committee, appointed by the county manager early in November, 1936, recommended the enactment of legislation repealing chapter 833 of the Laws of 1933 and its amendments. On April 2, 1937, the board of supervisors directed the county legal adviser to institute actions against the towns of Irondequoit, Brighton and Pittsford to recover money or bonds in compliance with the statutes. (Proceedings of the Board of Supervisors, 1937, p. 113.) Early in June, 1937, actions were begun by the county against the towns for this purpose.

In the light of these facts, I am convinced that any charge of dereliction of duty against the officials of the county is untenable. What the facts reveal is an honest and diligent effort to find a solution for a problem of great complexity and wide ramifications. Considerations of public policy made it imperative that the delicate problems created by the accumulating tax delinquencies should be studied dispassionately in an effort to find a remedy that would be just to the towns and to the county. In the search for a solution that would promote the interests of the county, the public officials enlisted the aid of representative citizens in the community.

No inference of an indifference to duty can be drawn from the abrogation in January, 1936, of the resolutions of December, 1935, directing the county attorney to institute actions against the towns on the tax deficiencies. This action by the board of supervisors was required by article 2-A of the County Law (Laws of 1935, chap. 948), which became operative in Monroe county on January 1, 1936, and which abolished the office of county attorney. In January, 1936, moreover, a new administration took office, unfamiliar with the intricacies of the tax situation, and time was needed before these new officials could master the details of all the problems and determine on the best course in the interests of the people of the county. The history of the resolutions passed by the board of supervisors during this period reveals doubt whether these problems could be best resolved through legislation or through judicial action. I am not prepared to say that reasonable men might not have such a doubt and surely it does not argue a sacrifice of the interests of the taxpayers that a step has been taken and

retraced, if the search for a remedy is not thereby abandoned. Delay and hesitation there may have been in some degree in dealing with this situation but it was a delay and hesitation born of a desire on the part of the board of supervisors to exercise the discretion conferred upon it by law in choosing a course of conduct that would best advance the interests of the county. Once the judgment of the board crystalized in the decision of April, 1937, to commence actions by the county to recover money or bonds from the towns, the fight by the county was vigorously carried forward in the prosecution and trial of the actions before the official referee.

The petitioner cannot, however, urge these facts in aid of his contention that there is no assurance that the actions instituted by the county against the towns will not meet the fate of the actions by the towns against the county. The county is entitled to the benefit of the presumption that its officials will omit no duty which the law lays upon them. (*Schieffelin* v. *Goldsmith*, 253 N. Y. 243, 252; *Matter of Evans* v. *Berry*, 262 id. 61, 72; *Schieffelin* v. *Lahey*, 243 id. 102, 112.)

But here there is more than a mere presumption of fidelity to duty. The actions of the county against the towns have been brought to issue expeditiously and after a trial of more than three weeks' duration have been submitted to the official referee for his decision. In the face of these irrefutable facts, the petitioner's fear of inertia on the part of the county officials is wholly groundless.

The nature of the petitioner's interest in the actions, no less than the intrinsic merits of the application, compels the conclusion that the petitioner has failed to establish his right to intervene. The petitions to intervene have been made under the authority of subdivision 3 of section 193 and section 195 of the Civil Practice Act. Section 195 permits a person to sue or defend as a representative of a group but the vital section for the purpose of determining whether the petitioner can sue at all is subdivision 3 of section 193. Under its provisions the applicant must, except where title or injury to real property is involved, have " an interest in the subject " of the action. This interest must be individual and not public, direct and not indirect, present and not remote. Interest in the result or outcome of the action will not suffice. (*Brooklyn Cooperage Co.* v. *Sherman Lumber Co.*, 220 N. Y. 642; *People* v. *Fisher*, 209 id. 392; *Bulova* v. *Barnett, Inc.*, 194 App. Div. 418, 422; *Doolittle* v. *Supervisors of Broome County*, 18 N. Y. 155; *Roosevelt* v. *Draper*, 23 id. 318.)

In *Bulova* v. *Barnett, Inc.* (*supra*) the court tersely expressed the result of the adjudicated cases in these terms (at p. 422): " The

courts have thus uniformly construed the words ' an interest in the subject ' of the action to mean a direct interest in the cause of action as pleaded and which would put the intervenor in a legal position to litigate a fact alleged in the complaint, without the establishment of which plaintiff could not recover."

The specific interest which the petitioner claims in the actions is the interest of a taxpayer and his liability to pay taxes by reason of his ownership of taxable property. The general nature of the interest — whether an interest in defending or an interest in prosecuting the actions —the petitioner fails to make explicit. He seeks as a representativ ɔ of taxpayers of the county to be made a party defendant not only in the actions brought by the towns against the county but also in the actions in which the county is plaintiff. It is certainly anomalous to ask for the right to intervene as a party defendant to resist an action brought by the very party the petitioner assumes to represent. In any event, it is clear that the interest of the petitioner does not satisfy the essential requirements prescribed by the courts. The only manner in which the petitioner can benefit from the county's success in the actions is through a slight proportionate reduction in the amount of taxes levied on a future tax roll. This interest is too tenuous upon which to base a foundation for a right of intervention. The petitioner has no direct interest in the proceeds of the action. Whatever interest he has is indirect and remote. He has merely an interest in the result or outcome of the action. He cannot gain any direct and immediate benefit from a judgment in favor of the county. He must wait until the benefit filters down to him through a reduction in his tax bill and he may not even have the solace of an assurance that the benefits will be passed on to him. It is difficult to see how the towns could state a cause of action against the petitioner, or how the petitioner could interpose a defense belonging to him personally against the towns. The petitioner does not suggest or even adumbrate a defense which might be interposed.

The cases upon which the petitioner relies (*Pollitz* v. *Gould*, 202 N. Y. 11; *Ithaca Gas Light Co.* v. *Treman*, 93 id. 660, and *Irish Free State* v. *Guaranty Safe Deposit Co.*, 126 Misc. 269) do not establish for the petitioner an interest that is strong enough to meet these criteria. In each of these cases the applicant for intervention had a tangible and direct interest in the subject of the action which is wholly lacking here.

The interest of the petitioner, however, is not individual and peculiar to himself. It is an interest which he shares in common with other taxpayers. Such an interest cannot give the applicant

a standing in court. (*Roosevelt* v. *Draper, supra; Doolittle* v. *Supervisors of Broome County, supra.*)

In the *Roosevelt* case (*supra*) a taxpayer brought an action to set aside a conveyance made by the city of New York. The court referred to the rule that a taxpayer must have an individual interest before he can assail an official act of a municipality, and upheld a judgment dismissing the complaint. Judge DENIO (at p. 323 of his opinion) described the interest which a taxpayer has in language which has peculiar relevance to the interest of the petitioner in this case. " The fact of owning taxable property is . not such a peculiarity as to take the case out of the rule, for all property, with very limited exceptions, is taxable, and everybody either has, or is capable of acquiring, property. Liability to contribute to the public burdens, where there are no privileged classes, is the lot of every member of the State, and a large proportion of all the acts of government, either general or local, involves questions of expenditure, and affects more or less the subject of taxation. If a plaintiff has taxable property at the time he commences his action, he may not have it when the next assessment for purposes of taxation is made; and if he have none when the act complained of is committed, he may be a large taxpayer when that act produces its result in increased taxation. The actual liability of the plaintiff to injury consists in his belonging to a community in which every person is subject to pay taxes of all he possesses. An act of administration likely to produce taxation is not, therefore, a matter of private or individual concern."

It is true that a taxpayer is not now remediless in the face of illegal and injurious acts on the part of public officials. Section 51 of the General Municipal Law has conferred on taxpayers the right to sue public officers under certain conditions but this section defines the area of intervention in public affairs which is open to taxpayers without individual interests in the subject of an action. The history of the statute, the evils at which it is directed, and the rule at common law closing the courts to taxpayers without an individual interest who seek to attack an official act, are all eloquent of a public policy intent on leaving the administration of public affairs to the duly elected representatives of the people and of barring a judicial review of the discretionary action of local officers and municipal bodies, except in certain circumstances specifically enumerated in the statute.

Section 51 of the General Municipal Law cannot be diverted from its purposes to support a right of intervention in an action in which a county or municipal corporation is a party. The section preserves the right of duly authorized public officials to prosecute

an action on behalf of the public corporation or body. The section specifically provides in part: " This section shall not be so construed as to take away any right of action from any county, town, village or municipal corporation, or from any public officer, but any right of action now existing, or which may hereafter exist in favor of any county, town, village or municipal corporation, or in favor of any officer thereof, may be enforced by action or otherwise by the persons hereinbefore authorized to prosecute and maintain actions."

The courts, in construing section 51 of the General Municipal Law and its predecessors, have been alert to defeat any effort of a taxpayer to subject the exercise of administrative or executive discretion on the part of a municipal officer to judicial scrutiny where there has been no fraud or collusion, or where there has been merely illegality without public injury. (*Western New York Water Co.* v. *City of Buffalo*, 242 N. Y. 202; *Talcott* v. *City of Buffalo*, 125 id. 280; *Nathan* v. *O'Brien*, 117 App. Div. 664; *Govers* v. *Board of Supervisors of Westchester County*, 55 id. 40; affd., 171 N. Y. 403; *Connelly* v. *City of Elmira*, 144 Misc. 282, 283.)

It would lead to intolerable abuses if a taxpayer could escape the duty of bringing himself within the requirements prescribed by section 51 of the General Municipal Law for the maintenance of a taxpayer's action by the simple expedient of moving to intervene in an action in which a municipal corporation was a party in an effort to challenge an official act which he could not directly assail.

It would appear that what the petitioner really seeks is to wrest the control of the litigation from the officials duly authorized to conduct it and to supplant one of the litigants on the theory that such litigant should be more zealous in the affirmation and defense of his rights. He is ready to stipulate that the evidence which has already been introduced in the actions shall be considered his evidence as well. Now that the arduous work has all been done, he wants to be a participant at the finish to see to it that the county, if successful, shall garner the fruits of its victory. His intrusion into these actions cannot be permitted.

" We know of no provision of law authorizing a person to be substituted for the plaintiff on the theory that the latter is not properly guarding his own rights. * * * Courts sometimes hear counsel as *amicus curiæ* though their clients are not interested in the subject of the action, but it would lead to intolerable abuses if persons interested only in the question to be decided were allowed to intervene and interfere with the conduct of the cause." (*People* v. *Fisher*, 209 N. Y. 392, 394.)

Another principle comes into play in so far, at least, as the petitioner's right to intervene in the actions by the towns is con-

cerned. In each of these actions the town seeks to recover a sum of money from the county. Where the plaintiff seeks a money judgment, he can select his own defendants and he cannot be compelled to bring in others not of his own choosing. (*Brooklyn Cooperage Co.* v. *Sherman Lumber Co., supra; Bauer* v. *Dewey,* 166 N. Y. 402, 407.)

There is another obstacle to the relief which the petitioner seeks. He has been guilty of laches in making this application. For more than six years he has stayed on the side lines of the struggle and has not moved a finger to protect the interests of which he is now solicitous. The actions by the county against the towns are already before the official referee for decision and, if the petitioner were allowed to intervene, much of the work already accomplished would, of necessity, be undone and the litigants compelled to retrace their steps and to meet new issues which the petitioner might raise. The petitioner has indicated that he is willing to stipulate that the evidence already submitted shall be considered his own, but the court cannot anticipate whether this evidence already before the official referee would meet the new issues that might be raised. Having reposed so long on his rights, he cannot now at this late date successfully revive them. (*Reid* v. *Products Mfg. Co.*, 116 Misc. 424.)

The conclusion which I have reached is in accord with an unreported decision of Mr. Justice KNAPP made on October 30, 1933, in one of these cases (*Town of Irondequoit* v. *County of Monroe*) denying a motion made by Louis J. Knapp to intervene as a taxpayer. To permit the petitioner to intervene on the facts of these cases would be to sanction a doctrine that would imperil the orderly administration of town and county affairs. It is essential to a healthy and virile democracy that the acts of its public officials should be periodically subjected to a searching scrutiny, but they ought to be immune from sporadic attacks in the courts which are made without sufficient foundation and which are likely to undermine public confidence. It is supremely important that the fiscal business of the town and county shall not be conducted in the courts at the behest of a taxpayer whose views of procedure and method may differ from those of the duly elected and chosen officials.

The motions of the petitioner to intervene in these actions are denied, with costs severally to the towns of Irondequoit, Brighton and Pittsford and to the county of Monroe.

Let orders enter accordingly.